WISCONSIN POWER & LIGHT COMPANY, Appellant, vs.
PUBLIC SERVICE COMMISSION and another, Respondents.

*January 12—June 6, 1939.*

For the appellant there was a brief by *Schubring, Ryan, Petersen & Sutherland* of Madison, and oral argument by *William Ryan*.

For the respondents there were briefs by the *Attorney General, Harold H. Persons,* assistant attorney general, and *H. T. Ferguson,* special assistant attorney general, attorneys for the Public Service Commission, and *Stanley W. Slagg*

of Edgerton and *Orland S. Loomis* of Mauston, attorneys for the city of Edgerton, and oral argument by *Mr. Ferguson, Mr. Persons, Mr. Loomis,* and *Mr. Slagg.*

The following opinion was filed March 7, 1939:

ROSENBERRY, C. J. The commission fixed the value of the property which the city of Edgerton had determined to take under the statute as of June 27, 1933, the time of holding the special election at which the electors voted to acquire the utility. It is the contention of the plaintiff that there has been a marked rise in the principal items which go to make up utility property, to wit, poles, copper wire, base materials, and transformers, since June 27, 1933. The plaintiff contends that if such increase in the value of materials and price of labor be given effect, the value of the property taken would increase between June 27, 1933, and October 15, 1935, in the sum of $16,251, and that if effect be given to the increase in the price of labor and materials, an increase in valuation to May 15, 1937, is $31,393. It is apparent that the question as of what date the property should be valued is an important and controlling one. The statute does not expressly provide as of what date the value of the property is to be fixed. When a municipality has determined to acquire a public utility and has given the statutory notice thereof, sec. 197.05 (1), Stats., provides:

"The commission shall thereupon set a time and place for a public hearing upon the matters of the just compensation to be paid for the property of such public utility, wheresoever situated, actually used and useful for the convenience of the public, and of all other terms and conditions of the purchase. . . ."

At the close of the hearing provided for by statute:

"The commission shall, by order, fix and determine and certify . . . just compensation to be paid for the taking of the property of such public utility actually used and useful for the convenience of the public and all other terms and all conditions of purchase which it shall ascertain to be reasonable." Sec. 197.05 (2), Stats.

Sec. 197.05 (3), Stats., provides:

". . . Upon the filing of such certificate with the clerk of such municipality the absolute title of the property taken shall vest in such municipality. . . ."

In this case the certificate which the commission is required to make and file in accordance with the provisions of sec. 197.05 (3), Stats., has never been filed with the clerk of the municipality. The order of September 10, 1935, provides:

"It is further ordered that upon evidence being presented to this commission of the payment of the amount herein required to be paid as and for the just compensation for the purchase of the property of the Wisconsin Power & Light Company by said city of Edgerton, to the person or persons lawfully entitled thereto or to a proper court for their benefit as above provided, a certificate of this commission of such just compensation and terms and conditions and of the payment and fulfilment thereof, be issued and filed in the manner prescribed by law."

While the commission says that the determination as set forth in the original order will be superseded and set aside by the findings and by the order and determination made after the rehearing, in some respects at least the two determinations supplement each other. In its second determination the commission says:

"We have considered that that reproduction cost new should be based upon prices as of a time, as near as may be possible, when the city by its vote determined to acquire the property involved."

It also said:

"We think that any evidence of the reproduction cost new of such property should be based upon prices prevailing at the time of the exercise of that option as far as practically possible."

It appears from a consideration of both determinations made by the commission that the commission fixed just compensation as near as possible as of the date when the munici-

pality voted to acquire the used and useful property of the utility.

A determination as to the time as of which the property should be valued requires us to give some further consideration to the nature of the proceeding under ch. 197, Stats., relating to municipal acquisition of utilities. In spite of all that the court has said over a period of twenty years, the commission continues to treat the transaction provided for by the statute as a purchase.

This matter was carefully considered by the court in *Wisconsin P. & L. Co. v. Public Service Comm.* (1935) 219 Wis. 104, 261 N. W. 711, 262 N. W. 257, and it was there pointed out that the rights of the parties are only to a very limited extent contractual. What the utility agrees to when it accepts an indeterminate permit is that its property may be acquired in the manner prescribed by statute. Here its contractual power ends. The right of the municipality to take the property is spoken of as an option. This is a clear misconception. When a person having an option accepts it, the acceptance results in a contract. When the municipality votes to acquire the utility, no contract results. That proceeding merely sets in operation the statutory process for the acquirement of the property. The first step in this process is a notice to the commission which then fixes a time for hearing, and then proceeds to determine, (1) what property of the utility is used and useful; (2) the just compensation to be paid by the municipality for the property found by the commission to be used and useful; and (3) to fix "all other terms and all conditions of purchase." The word "purchase" is not correctly used in this connection. What the commission does is to fix terms and conditions upon which the municipality acquires the property. In a purchase the terms and conditions are fixed not by a third party but by the parties to the bargain. The term "just compensation" which

the commission is to fix is a term advisedly used by the legislature for sec. 13, art. I, of the constitution provides:

"The property of no person shall be taken for public use without just compensation therefor."

That part of the process prescribed by statute subsequent to the determination of the municipality to acquire the property is in the nature of a condemnation proceeding. The only difference between the proceeding under ch. 197, Stats., and ch. 32, Stats., relating to eminent domain, is that under ch. 197 the method of determining just compensation is described with greater particularity, and the acceptance of an indeterminate permit waives a verdict of necessity which would otherwise be required under the constitution where the municipality acquires private property for a public purpose. As a matter of fact the parties to the acquirement proceedings are much more restricted in what they may do than are the parties to ordinary condemnation proceedings. After the municipality votes, the parties cannot, except with the consent and approval of the commission, agree upon what specific property shall be taken. That must be, as it was in this case, determined by the commission. In this case upon stipulation of the parties, the commission included property which it thought not to be within the calls of the statute, but having consented to that, neither party can complain. The parties to the proceeding cannot agree upon the price. They are required to present their respective contentions to the commission, and the commission fixes not the price but just compensation. The statute prescribes how and in what manner the title shall pass. That is wholly within the control of the commission so that by no stretch of the imagination can the acquirement proceeding be conceived of as a purchase in the ordinary and usual acceptation of that term. The parties are deprived of the power of contract which is the very essence of a purchase. Title by purchase is one that is

vested in a person by his own act or agreement. 2 Blackstone, Com. p. 241. The term "purchase" is nowhere used in the law to describe the acquisition of property by eminent domain. Sec. 32.02, Stats., illustrates the difference. It provides:

"The following municipalities . . . may acquire by condemnation any real estate . . . in case such property cannot be acquired by gift or purchase at an agreed price."

The fact that some prior decisions and even in some sections of the statute the process is designated a "purchase" does not change or affect its real nature which must be determined by what the statute requires to be done. Calling a statutory proceeding a "purchase" does not make it a purchase.

When the municipality has determined to acquire the property of a utility operating under an indeterminate permit, it is required to give notice to the utility and to the Public Service Commission (sec. 197.03, Stats.). The commission thereupon is required to set a time and place for a public hearing upon the matter of just compensation of which notice is to be given by publication. Upon completion of the hearing, the commission is required by order to fix and determine the amount of just compensation. When this amount has been determined and the commission has fixed the other terms and conditions, it is thereupon required to file a certificate with the clerk of the municipality, and upon the filing of this certificate the title to the property absolutely passes. As was pointed out in *Wisconsin P. & L. Co. v. Public Service Comm., supra,* when the municipality takes title it takes it free and clear of all liens and incumbrances. This, if nothing else, characterizes the process as an exercise of the power of eminent domain. The parties could not by any sort of contract between themselves free the property from existing valid liens.

While the statute requires the commission to determine the amount of just compensation to be paid, it nowhere fixes

the time as of which that fact is to be determined. No doubt the legislature expected that the process would be one of comparatively short duration. Certainly there was no expectation that as in this case the delay would cover a period of nearly six years. The certificate which passes title has not yet been filed in this case, the purchase price has not been paid, and the statutory process has not yet been completed. Under such circumstances it becomes of the highest importance both to the utility and to the municipality to know as of what date just compensation is to be fixed. Prices rise and fall. If since the day when the municipality voted to acquire the property prices have fallen and just compensation is to be fixed as of that date, the municipality may be required to pay a larger price than it anticipated. If, on the other hand, the price level has risen, the utility is required to part with its property for less than its real value at the time it is acquired.

Under the provisions of sec. 197.04, Stats., the municipality has a right to discontinue the proceeding "at any time within ninety days after the final determination of compensation by the commission," by resolution of its municipal council, which resolution, however, shall not be effective until ninety days after its passage. This last provision permits of a referendum. A vote to acquire the property of the utility is a vote to acquire it subject to the right of the municipality to discontinue the proceeding if in its opinion the amount of the award is unreasonable. If the award is made as of the date of the special election, and is not made until six years after the election, but is based on values as of the time of such election, and in the meantime additions to and retirements from the property are computed, the municipality may acquire a substantially different plant than existed at the time of the election. Manifestly, the value should be fixed at a time as near the holding of the election as is reasonably practicable in order that the municipality may receive the plant it voted to acquire. There are many other consid-

erations affecting the rights of the municipality as well as those of the utility which indicate the desirability of a prompt determination of just compensation. No doubt the legislature when it enacted ch. 197, Stats., left the time as to which the just compensation should be determined open in order that the proceedings of the commission might be as flexible as possible. The legislature might reasonably expect that just compensation would be fixed at a time so near the initiation of the proceeding as not to be unfair either to the municipality or to the utility. In a case like the present, it becomes necessary by reason of the long delay to determine as of what date just compensation should be fixed.

In this country the authorities are in general accord upon the proposition that the value of the property taken is to be measured as of the time of the taking or appropriation thereof. *Sweaney v. United States* (1885), 62 Wis. 396, 22 N. W. 609. See cases cited in note, 9 Ann. Cas. 115, 18 Am. Jur. § 263. Upon the question of when the property is taken there is a split of authorities, the result in different jurisdictions depending upon the peculiar wording of the constitutional provisions relating to the power of eminent domain or upon the statutes pursuant to which the proceedings are conducted. In some jurisdictions the date of filing the petition is the time of taking; in some jurisdictions the date of filing the bond; in other jurisdictions, the date of entry upon the property; and in other jurisdictions, among which is Wisconsin, the date of the award fixes the time of taking. *West v. Milwaukee, Lake Shore & Western R. Co.* (1882) 56 Wis. 318, 14 N. W. 292, and cases there cited. In *Murray Hill L. Co. v. Milwaukee L., H. & T. Co.* (1905) 126 Wis. 14, 22, 104 N. W. 1003, it is said:

"Under our statutes (secs. 1850, 1851) above referred to, the filing of the award of the commissioners in condemnation proceedings and the payment of the amount thereof by the corporation as therein prescribed vest the title and exclusive use of the premises in the corporation, subject to the

amount of the award being increased or diminished on appeal; and then the question of value relates back to the time of filing the award." (Cases cited.)

See also *Jeffery v. Chicago & M. E. R. Co.* (1909) 138 Wis. 1, 9, 119 N. W. 879, where it is said:

"The condemnation of the land as to the quantity and interest taken became fixed by the order on the hearing of the petition, and the filing of the award, payment of the amount awarded, and taking possession. . . . The appellant could not, on appeal from the award, elect to take a lesser estate or different interest than that taken below, and which it possessed itself of by compliance with the statute and taking possession."

See also cases cited 9 Ann. Cas. 117, 55 A. L. R. 201, 2 Nichols, Em. Dom. p. 1152, § 439.

As has already been stated, the first award was made by the commission on September 10, 1935, but the statute, sec. 196.405, Stats., provides that the commission may in its discretion grant a rehearing, and further provides:

"(3) . . . Any decision, order or determination made after such rehearing revising, changing, modifying or suspending the original determination shall have the same force and effect as an original decision, order or determination. . . ."

The effect of this statute where a rehearing is granted is to postpone the effect of the order for the statute provides:

"(5) It is hereby declared that the legislative powers of the state, in so far as they are involved in the issuance of orders and decisions by the commission, have not been completely exercised until the commission has acted upon an application for rehearing, as provided for by this section. . . ."

This was no doubt inserted for the purpose of preventing judicial review until the commission had made a final determination either upon a rehearing or by denying a rehearing. No doubt the award of March 30, 1936, would have been a final award had no action to review it been brought as provided by statute.

Sec. 197.06, Stats., provides:

"Any public utility or the municipality or any bondholder, mortgagee, lienor or other creditor of the public utility, being dissatisfied with such order, may prosecute an action to alter or amend such order or any part thereof, as provided in sections 196.41 to 196.48."

Sec. 196.41, Stats., authorizes an action to be begun to vacate and set aside such order or determination on the ground that it is unlawful or unreasonable. While sec. 197.06 speaks of altering or amending the order, the proceeding before the commission being an exercise of legislative power it is not within the province of the court to substitute its judgment for that of the commission. While the determination of just compensation is under some statutes a judicial question, ch. 197, Stats., commits that power to the commission. The court must either vacate and set aside the order or affirm it.

If in the course of the proceeding authorized by chs. 196 and 197, Stats., the award is vacated and set aside when under such circumstances is the property of the utility taken? In most of the cases involving the exercise of the power of eminent domain the statutes contain a provision to the effect that when the award is made by the commission or appraisers, the condemnor may pay into court the amount of the award and is thereupon entitled to the possession of the property. In the event that there is an appeal from the award, in many cases the condemnor is obliged to give bond to pay an increased amount if it is awarded in a subsequent trial. Upon the trial the question tried is the value of the premises at the time the award is made, not at the time of the trial. Ch. 197, Stats., contains no such provision with respect to payment and the right to go into possession. The statute as enacted appears to contemplate that when the certificate is made it will be forthwith filed, whereupon the title to the

property would pass to the municipality and it would become entitled to possession. However, an action was brought in the federal court of the Eastern district of Wisconsin to enjoin the municipality from going into possession on the ground that it was not entitled to possession until payment had been made. The federal court so held although the case is unreported. This accounts for the fact that the present order of the commission now under consideration provides that the municipality shall have four months in which to arrange for payment, and when payment is made notice shall be given to the commission, whereupon the certificate will be filed and the title will pass. If, however, an award is set aside on the ground that it is unlawful or unreasonable, then a new award must be made upon the remand of the record to the commission. When that award is made, unless set aside, it will be the final award, and the municipality will have the statutory time for discontinuance of the proceeding. It is true that the making of the award which eventually is determined to be the final award subjects the municipality to the hazard of having its right of possession postponed and in the interval the value of the property might diminish and it would still be bound to proceed, having failed to commence discontinuance proceedings within ninety days of the making, not filing of the award. The statute is imperfectly drawn and does not adequately safeguard the rights of either party in certain contingencies.

Under its power to fix the terms and conditions of purchase, the commission has exercised wide discretionary powers. There is no provision in the statute authorizing the commission to withhold filing the certificate for any length of time. Neither is specific authority given the commission to suspend the proceeding pending an appeal in another case for a year or more. This court has said that the power of the commission to fix terms and conditions is ample to enable

it to deal with circumstances in each case. *Appleton Water Works Co. v. Railroad Comm.* (1913) 154 Wis. 121, 131, 142 N. W. 476. Its powers in that respect are not challenged.

Some attention must be given to the particular situation which confronts not only the parties but the commission in the administration of the law. The municipality does not know whether it will ultimately determine to acquire the property until the award is made. If the delays authorized by statute ensue, another six months elapses before the municipality's determination is final. Some accommodation must be made under the power of the commission to fix terms and conditions. The utility is under a duty to continue furnishing service to the public. In the jurisdiction adopting the rule that the time of the award is the time of taking, interest was allowed from that time until the payment was made. Here, however, the utility is in possession of its property from which it is deriving revenues and a rule of that kind would be inapplicable. If, as already indicated, the award is set aside on judicial review either by the circuit court or this court, then the commission must proceed to redetermine just compensation. Whether the power of the municipality to tax property within its borders constitutes such a pledge or security for the payment of just compensation as would warrant a provision in the statute that the municipality might go into possession upon the making of the award is a question which is not before us. In cases where municipalities have reached or nearly reached their debt limit under the constitution the taxing power would hardly seem to be a sufficient guaranty of payment, and we understand that it was so held by the federal court. Therefore, the commission allows the municipality a reasonable time to make up the funds with which to pay for the property after its determination is made and for that reason withholds the filing of the certificate under sec. 197.05 (3), Stats.

The commission having ascertained just compensation on the basis of the value of the property as of June 27, 1933, when its award in fact was not made final until March 30, 1936, we see no escape from the conclusion that its order fixing just compensation is unlawful. *Appleton Water Works Co. v. Railroad Comm., supra.* It is no doubt true as argued by the commission in its determination that if the date of taking be fixed as of the date of making the award, there will still be some lapse of time before the utility receives its pay and the title passes to the municipality, but that situation can in all ordinary cases be provided for by exercising the power granted to the commission to fix terms and conditions.

We see no inherent difficulty in the commission fixing just compensation as of the date of its award. If since the time of the making of the inventory and appraisal by its engineers price levels have changed materially that fact may be taken into consideration in fixing just compensation. With respect to the period that elapses after the fixing of just compensation during which the municipality may discontinue proceeding, in all similar cases under the condemnation statutes a reasonable time is allowed. The time fixed by sec. 197.04, Stats., seems to be reasonable inasmuch as the municipality must act by its council and the action of the council must be subject to a referendum. While it is possible, it is not probable that there will be such violent fluctuations in the price levels as to render the award unlawful and unreasonable, but when there is added to the six-month period after the making of the award before it may become final, a period of years, an award made as of the day of the municipal election cannot be sustained. The date of the award is fixed upon because when the matter is presented to the municipal council it must have something definite and certain upon which to act, and if a referendum is held the people of the municipality are entitled to know upon what they are voting.

Some contention is made with respect to the right of the commission to determine the net amount of additions and retirements to the plant pending the time which elapses after the making of the award and the time of payment. It is claimed that the property is taken under such circumstances in a manner not provided by statute. It is considered in view of the fact that the utility must continue furnishing services as long as its property remains in its possession that compensation for retirements from and additions to the plant in the meantime is in the nature of an accounting, and the commission may make such accounting under its authority to fix terms and conditions.

In its determination of what property belonging to the utility was used and useful, the commission omitted what is known as the Sheepskin substation. This substation is located about one and one-half miles outside of the city of Edgerton and in close proximity to the 66,000-volt transmission line of the plaintiff running from Prairie du Sac to Janesville. In addition to Edgerton it serves Cambridge and Rockdale. In its determination of the property used and useful, the commission included the transmission line from the Sheepskin substation north of the boundary limits of the city upon stipulation of the parties. The determination of this question is one of fact, and we see no ground upon which it can be said there is no evidence to support the finding of the commission.

Plaintiff's claim of severance damages cannot be sustained, and the controversy in that respect is ruled by *Wisconsin P. & L. Co. v. Public Service Comm., supra.*

Plaintiff contends that under the doctrine of the *Morgan Cases* [1] it has not had a fair hearing. Plaintiff quotes from the first case as follows (p. 480):

"There must be a full hearing. There must be evidence adequate to support pertinent and necessary findings of fact.

[1] *Morgan v. United States,* 298 U. S. 468; *Morgan v. United States,* 304 U. S. 1.

Nothing can be treated as evidence which is not introduced as such. [Citing cases.] Facts and circumstances which ought to be considered must not be excluded. Facts and circumstances must not be considered which should not legally influence the conclusions. Findings based on the evidence must embrace the basic facts which are needed to sustain the order."

Under this rule the plaintiff contends that it is entitled to specific findings as set out in its fifth request for findings to be advised of the method used by the commission in determining depreciation; that it be advised as to the method used in determining the depreciation of each of the classes of property enumerated in the fifth request; that the commission be required to make a finding stating what sum, if any, the commission includes for engineering, supervision, interest during construction, contingencies, etc., and that the commission make a finding stating the amount allowed, if any, for going value. Upon the rehearing the commission declined to comply with these requests. The commission in its determination said:

"In fixing the just compensation in this case, the commission has not determined any specific amount as constituting the value either of the physical or intangible property of the utility involved. It has rather considered all of the evidence relating to both tangible and intangible assets, and upon that evidence and by the exercise of its own judgment and experience, has determined what should be the just compensation in this case. Since no specific amount has been determined as constituting the value of any particular element of the property for which just compensation is determined, such specific amounts not only are not set forth, but could not be set forth, herein. We have sought to determine the value of the property subject to acquisition, including the 'going value of the utility' as a complete entity and not by a process of adding up ascribed values or appraisals of each of the separate items that constitute that entire entity of property."

It is considered that the contentions of the plaintiff with respect to the nature of the findings are answered by the de-

cision in the *Appleton Water Works Co. Case* already cited. The court said (p. 148) :

"However, the fundamental difficulty with the attempt to set a definite sum as the measure of going value is that it is an attempt to divide a thing which is in its nature practically indivisible. The value of the plant and business is an indivisible gross amount. It is not obtained by adding up a number of separate items, but by taking a comprehensive view of each and all of the elements of property, tangible and intangible, including property rights, and considering them all not as separate things, but as inseparable parts of one harmonious entity, and exercising the judgment as to the value of that entity. In this way the going value goes into the final result, but it would be difficult for even an expert to say how many dollars of the result represent it."

In this case it is not claimed that the commission did not consider all of the relevant evidence bearing upon the ultimate question of value. The commission is not required as a part of its determination to set out the value of each particular element of the property. It must, however, appear that it has considered all of the elements, including "going value." This the commission clearly did in this case as appears from its determination. What the plaintiff demands is that the commission apportion the just compensation found among the several items going to make up the tangible and intangible property of the utility in order that the commission may then be subjected to a sort of cross-examination as to the correctness of the apportionment. In *Wisconsin Gas & Electric Co. v. Tax Comm.* (1936) 221 Wis. 487, 494, 266 N. W. 186, 268 N. W. 121, the court said :

"It follows that the review of such an assessment as is here involved is a review of the commission's judgment, a judgment which is presumably correct and not subject to being overthrown except by evidence clearly showing that it was exercised upon some gravely erroneous basis. Since the members of the commission are not subject to cross-examination as to the operation of their mental processes in arriving at an assessment, . . . the review must necessarily consist of a rationalization of the assessment by application

to the facts of standard and approved methods of valuing such properties."

While that was said in a tax case, it is equally applicable to a proceeding under ch. 197, Stats. No doubt it would make the determination of the commission more vulnerable to attack if it were compelled to allocate the total amount found as just compensation to the various items of property. This it is not required to do. If the commission proceeded in a lawful manner, its determination is to be set aside only when it appears that it is unlawful or unreasonable. The burden of establishing that fact is by the statute cast upon the one who assails the correctness of the finding. While the *Morgan Case* holds that findings based on the evidence must embrace the basic facts, the ultimate or basic fact in this case is what constitutes just compensation. In a case such as the *Morgan Case,* other basic facts must be found. That was a rate case and involved many factors not involved in a proceeding such as the one here under consideration. The determination of the commission discloses that it considered all of the relevant evidence in arriving at its conclusion as to just compensation. A fair hearing does not require that the findings be split up so as to make the determination of the commission more readily subject to attack.

If, as plaintiff contends, it is necessary in order for it to have an effective review that the finding of just compensation be broken down into its component parts, it should appeal to the legislature for relief rather than to the court. Unless upon the whole case it is made to appear that the Public Service Commission has proceeded contrary to law, or has arrived at an unreasonable result, the court must approve its determination. The statute requires the commission to determine and certify "just compensation" and to fix the terms and conditions of sale. If the procedure followed by the commission amounts to due process it must be approved. It is not the province of the court to prescribe rules of procedure for an administrative body. That is a function of the legislature.

This disposes of all the questions raised on this appeal. For the reason that the just compensation was not fixed as of the time of the taking of the property, the order must be set aside. The proceeding in all other respects is approved.

*By the Court.*—The judgment appealed from is reversed, and cause remanded with directions to the circuit court to enter judgment setting aside the order and for further proceedings according to law.

The following opinion was filed June 6, 1939:

ROSENBERRY, C. J. (*on motion for rehearing*). The Public Service Commission moves for a rehearing in this case and contends that the mandate should be modified. In the opinion it was stated that the proceeding was legislative in character. We shall not discuss that matter at this time for the reason that it is not necessary to a determination of the issues raised. Under the statute it is the duty of the commission to fix just compensation. Sec. 197.05 (2), Stats. In this case it fixed just compensation as of the time when the municipality voted to acquire the utility. This court interprets the statute as requiring just compensation to be fixed as of the time when the commission makes its award. The order therefore is a failure to comply with the statutory command, and it is considered that it is proper for that reason to set aside the order in accordance with the original mandate. Upon the return of the record to the commission it will be the duty of the commission to fix compensation in accordance with the terms of the statute.

The commission further expresses doubt as to what is meant by the time of the award with respect to the fixing of just compensation. There are statutory difficulties because the statute is not clear or definite. These difficulties were pointed out in the original opinion. We hold that when the commission makes an award which may be the subject of discontinuance proceedings under sec. 197.04, Stats., the making of that award is the time of taking and the time as of which just compensation should be fixed. It is true that

thereafter there may be further proceedings which will delay the final filing of the determination of the commission. The statute in some respects is scarcely workable, but this is as near a workable construction considering all of its terms as can be found, at least no more workable one has been pointed out.

*By the Court.*——Motion for rehearing denied without costs.