CITY OF PADUCAH et al.

v.

KENTUCKY UTILITIES CO. et al.

PIERCE et al.   v.   GREGORY et al.

Court of Appeals of Kentucky.

Dec. 11, 1953.

Motion for Extension of Opinion Denied
March 12, 1954.

Adrian H. Terrell and Earle T. Shoup, Paducah, for appellants.

Squire R. Ogden, Louisville, Clifford E. Smith, Frankfort, James G. Wheeler, Paducah, for appellees.

COMBS, Justice.

These appeals present another chapter in prolonged litigation between Kentucky Utilities Company and the City of Paducah. The city, in 1940, granted to the company a twenty-year franchise to furnish electric current to the city and its environs. By section 7 of the franchise the city reserved the option to purchase the company's system "used and useful" within the city, upon certain stated conditions. In 1944 the

city elected to exercise its option. Different aspects of the litigation which followed have been before this court on four occasions. In 1945 we overruled the company's motion to dissolve an injunction which required it to appoint an appraiser; we refused in 1947 to dissolve another injunction requiring the appraisers to complete their work of appraisal; in 1948 we held in a reported opinion that the option to purchase was valid and enforceable. Kentucky Utilities Company v. City of Paducah, 308 Ky. 305, 214 S.W.2d 258. In that case, we said, in effect, that the city was entitled to purchase the property at a price fixed by appraisal according to the method set out in section 7 of the franchise. In 1950 five Judges of this Court granted an injunction to prevent the city from submitting to the voters the question whether the company's properties should be purchased by the city. The ground for that ruling was that the proposed question was not authorized by the statute. KRS 96.640.

Before us now are: (1) An appeal by the city from a judgment declaring the rights of the parties in regard to appraisal of the property; (2) a cross-appeal by the company in the same case; (3) a separate appeal by the company from the judgment declaring the rights of the parties; (4) an appeal by the city from an order enjoining it from obtaining at the 1953 November election the sense of the voters on the question of purchasing the company's properties. We affirmed the judgment in the injunction case, without written opinion, on October 23, 1953. Since all the appeals have been prosecuted on the same record, they will be disposed of in this opinion.

The rights of the parties depend for the most part upon section 7 of the franchise. We, therefore, set out the pertinent parts:

"Section 7. The rights granted by this franchise shall continue for a period of twenty (20) years from the date on which the City shall by action of its legislative body, accept the bid of the purchaser, except that there is expressly reserved to the City the right to revoke, annul and cancel this franchise as of a date eighteen months after the City gives to the purchaser written notice of such action and upon compliance with the following conditions:

"(a) By notifying the purchaser in writing of its desire to enter into an agreement as to the value of the electric system owned by it in Paducah, Kentucky, and thereafter complying with all laws regulating the acquisition by purchase of electric light, heat, power plants and distribution facilities, the City may purchase, in the event of fair and reasonable price is agreed upon, all of the facilities of the purchaser located within the City and which are used and useful in the purchaser's electric utility business in said City.

"(b) * * *

"(c) If no fair and reasonable price shall be agreed upon within sixty (60) days after the aforesaid notice shall be given the purchaser, a Board of Appraisers consisting of two members shall be appointed, one by the Mayor with the approval of the Board of Commissioners and the other by the purchaser. Such appointments shall be made within thirty (30) days after the expiration of the time given the parties to agree upon the value of said properties.

"(d) Should the two members of said Board of Appraisers, so appointed by the City and the purchaser respectively, be unable to agree upon a fair and reasonable price of said electric utilities system in said City as herein provided, a third member of said Board, to act as umpire, shall be selected by them. In the event said two appraisers cannot agree upon the third member of said Board, then upon application by either the City or the purchaser, the presiding Judge of the United States District Court for the Western District of Kentucky shall name said third appraiser.

"(e) It shall be the duty of said Board of Appraisers to make a survey of, appraise, and submit to the City in writing its valuation of said electric utilities system. The board appointed for the purpose of making said appraisal shall file their written report within six (6) months next after

their appointment. The value fixed by two of the three members of said Board of Appraisers shall be the finding of the Board; provided however, that in the event that two of the three members cannot agree within six (6) months after the appointment of the first two members, then and in such event the entire first board shall be discharged and cease to function, and in such event a second board may be appointed immediately as herein provided. It shall be the duty of the City to pay all compensation to the member appointed by it, and the duty of the purchaser to pay all compensation to the member appointed by it, and the City and the purchaser shall each pay one-half of the compensation which may be due the third member and one-half of all other costs incurred in connection with the work of the Board of Appraisers.

"(f) * * *

"(g) The value of the purchaser's properties shall be the amount as determined by the Board of Appraisers and upon the filing of their report of appraisal, the City may proceed to purchase the same as provided under Section 3480d–3 of the Kentucky Statutes, or under such other Acts of the Legislature then regulating the acquisition by purchase of electric light, heat, and power plants by cities of the second class, * * *."

The material issues on these appeals may be summarized:

1. Does an exchange of letters in December, 1948, between Howson and Hartt, the two appraisers, and the City Manager constitute an appraisal within the meaning of the franchise ordinance?

2. Is the company required to sell its properties at the 1945–46 prices fixed by the appraisers in their correspondence with the City Manager?

3. Is generating plant No. 2 a part of the company's properties within the meaning of the franchise ordinance?

4. Are certain transmission lines within the city to be considered as part of the company's properties within the meaning of section 7 of the ordinance?

5. Is L. R. Howson disqualified to act as an appraiser?

6. Is the city's right to acquire the company's properties barred by laches?

7. If the exchange of letters, referred to in (1) above, does not amount to an appraisal, should the two appraisers, Howson and Hartt, be permitted to continue their work and make a proper appraisal?

8. Did the question proposed to be submitted to the voters at the November, 1953, election fairly submit the issue in compliance with the applicable statute, KRS 96.-640?

Briefly stated, the Chancellor's judgment holds: a. The exchange of letters between Howson and Hartt and the City Manager did not constitute an appraisal; b. generating plant No. 2 is a part of the company's properties within the city and must be purchased if the city exercises its option; c. the transmission lines referred to in (4) above are part of the company's properties within the meaning of the ordinance; d. L. R. Howson is not disqualified to act as an appraiser; e. the city's right to acquire the company's facilities is not barred by laches; f. the two appraisers, Howson and Hartt, should be permitted to continue their work and make a proper appraisal; g. the question proposed to be submitted to the voters at the November, 1953, election did not fairly submit the issue and did not comply with the statute.

The main bone of contention is whether the exchange of letters between Howson and Hartt and the City Manager constitutes an appraisal within the meaning of the franchise ordinance. The first of these letters, signed by both Howson and Hartt, is dated December 7, 1948, and addressed to Victor C. Hobday, City Manager of Paducah, and Robert M. Watt, President of Kentucky Utilities Company. In that letter the appraisers stated that they had been working intermittently on an appraisal of the Paducah electric system; that they had ar-

rived at the amount set out in the letter as the agreed cost of reproduction of the system, less depreciation, using 1945–46 prices and omitting going value and severance allowance; that agreement had also been reached as to the value of the system based on the 1947 price level, but neither appraiser had made an estimate based on 1948 prices; that recognized cost indices showed late 1948 prices to be approximately 10% higher than 1947 prices. The appraisers then expressed the desire to meet in conference with the principals and their engineers. The letter continued:

"* * * In view of the elements of time and cost involved in making further reproduction estimates and what appears to us to be the obvious advantage of the procedure herein recommended, we will postpone further work until we receive your specific instructions."

Mr. Hobday, the City Manager, by letter of December 13, 1948, requested that the appraisers furnish more specific information in regard to the amount allowed for going value and severance allowance. The appraisers replied by letter of December 15, 1948. In that letter they clarified the item of going value and severance allowance based on 1945–46 and 1947 prices, but stated that going value and severance allowance had not been calculated on 1948 prices. The appraisers also stated:

"* * * We are in agreement as to the fair and reasonable value of the system for the two respective periods of 1945–46 and 1947 but have made no computations based upon the 1948 present day prices. We are not in agreement as to what price levels should prevail."

In the concluding sentence of the letter the appraisers renewed their suggestion of a conference between themselves and representatives of the company and the city.

We do not construe this exchange of letters as an appraisal within the meaning of the franchise ordinance. The letters are not designated as a report or as a final appraisal, and their context does not indicate they were intended as such. They do not reflect a meeting of the minds of the appraisers on all the questions in issue. No attempt had been made to appraise additions and improvements made between the 1945–46 appraisal period and December, 1948. The letter of December 7 very clearly implies that other work remained to be done by the appraisers. The letter of December 15 contains the same implication to a lesser extent. A conference between the appraisers and the principals was suggested in both letters. What is perhaps more important, neither letter lists nor identifies any specific property other than by general reference to the "Paducah electric properties." The importance of this omission became apparent when it was developed by the pleadings and testimony that the appraisers had surveyed and included in their estimates property of the company located outside the city; and had failed to include generating plant No. 2 and certain transmission lines, valuable properties of the company within the city. We think the appraisal contemplated by the franchise ordinance is one substantially complete in itself; that is to say, sufficiently comprehensive that the amounts agreed upon by the appraisers can be ascertained without the aid of extrinsic testimony, or the necessity of making substantial extensions of the figures shown, or material deductions from the amounts listed. It seems to us that both sides are entitled to this type of appraisal as a matter of right.

Upon what price period should the appraisal be based? The city vigorously insists it is entitled to buy the system at 1945–46 prices, plus such amount as represents the fair value of additions and improvements, less retirements, made between the 1945–46 period and the date of sale. The argument is predicated upon notice by the city in 1944 of its intention to purchase, and the charge that the long delay in consummation of the sale is the result of unwarranted dilatory tactics on the part of the company. The argument is based, of course, upon the supposition that the letters of the appraisers to the City Man-

ager constitute an appraisal of the system. Legal notice of the city's intention to purchase is admitted, but the other two premises upon which the argument rests are not established. Although the company apparently has utilized every legal right open to it and has done nothing to expedite the sale, we find nothing in the record nor in the history of the related litigation which would justify the imposition of a penalty or forfeiture against the company. True, the litigation has been drawn out ad infinitum but we are unable to put our finger on any one thing and say this caused the delay and this is the party at fault. Although the city complains bitterly about the delay, we note that no request was made to the chancellor that he hear the case in open court. On the contrary, both sides apparently were content to prepare a voluminous record by time consuming depositions. But regardless of the responsibility for the delay, the basic weakness in the city's position is the lack of a valid appraisal of the property.

■■ The city contends that the franchise ordinance should be given a common sense interpretation, and allowance made for adjustments to cover the period between the appraisal date and the date of sale. Otherwise, it is said, the sale could never be accomplished. We agree. But, as conditions precedent to purchase of the system the city must ascertain the price to be paid; and this must be done by the appraisal method set out in the ordinance. The city then must obtain the approval of the voters of the city for the proposed purchase. Obviously, some time will elapse between the date of appraisal and the effective date of the sale, assuming, of course, that the voters approve the proposed purchase. The adjustments necessitated by changes occurring during that transitional period should be made by the court in the event of disagreement between the parties. In short, the valuation of the properties should be determined as near the date of sale as is reasonably possible, and the court should make the necessary adjustments to protect the rights of the parties. The appraisers should, of course, use as the basis for their appraisal the price base existing at the time of appraisal. Cf. Wisconsin Power and Light Company v. Public Service Commission, 231 Wis. 390, 284 N.W. 586, 286 N.W. 392; Cohasset Water Company v. Town of Cohasset, 321 Mass. 137, 72 N.E.2d 3.

■■ Whether generating plant No. 2 and the transmission lines referred to in the pleadings and judgment are part of the company's system within the meaning of the franchise ordinance are questions of fact. The chancellor held that they are part of the system and the evidence sustains that finding. When the appraisers made their survey in 1945–46 these properties perhaps were not a necessary part of the system. But conditions have changed. The federal government, in 1951, announced its intention to construct an atomic energy plant near the City of Paducah. Some 28,000 workers are now employed in the construction of this plant or on related projects. As a result, the population of Paducah has increased within a period of two years from about 32,000 to around 60,000. The demand for electricity has, of course, increased proportionately. As a consequence, it now appears that generating plant No. 2 and the transmission lines in question must be considered as part of the system "used and useful" as those terms are used in the ordinance.

■ The company contends that L. R. Howson is disqualified to act as an appraiser because of his close identification with the city and its officials. We find no merit in that contention. The ordinance does not require that the appraisers possess any particular qualifications.

■ The company also advances the argument that the city is barred by laches from acquiring the company's system under the franchise ordinance. The basis for this argument is that from September, 1950, to May, 1952, the city took no action in the declaratory judgment suit, which is one of the cases now before us, thereby demonstrating an intention to abandon its effort to acquire the company's properties. It is contended that the city changed its position

854

only after the location of the atomic energy plant made the company's system much more valuable. Although this period of inaction for more than 18 months is not explained by the city and is inconsistent with the charge that all the delay is attributable to the company, we do not regard the city's inaction during this period as sufficient to invoke the doctrine of laches or abandonment.

In order that the two appraisers might be able to complete their appraisal, the chancellor granted them an extension of six months from the effective date of his judgment, with directions that if they are unable to reach agreement within three months a third appraiser should be appointed according to the provisions of the franchise ordinance. The company takes exception to this part of the judgment for the reason, among others, that the court cannot require the appraisers to serve. We agree that the court has no authority to require the appraisers to serve, but as we construe this part of the judgment it is based on the assumption the appraisers will agree to continue their work. If they will not agree to serve, then other appraisers must be appointed in the manner directed by the ordinance. It seems to us, however, that it will be to the best interest of all concerned if the two appraisers will agree to complete their appraisal. It appears that they have performed their duties with diligence to date, and that with more cooperation and less interference from the lawyers their task would have been completed on time. Moreover, the knowledge the appraisers already possess in regard to these properties should be of material value to them in making a new appraisal. Before quitting this subject, it should be noted that the statement in our former opinion that "it is the full board of three members that shall be penalized by discharge on the ground of time expiration" [308 Ky. 305, 214 S.W.2d 261] was an inadvertence. The chancellor has properly construed the ordinance on this point, and the extension of time granted by him to the appraisers should commence to run from the date the mandate of this court is filed in the circuit court.

We come now to the question which the city proposed to submit to the voters at the 1953 November election. The so-called TVA Act, KRS 96.550 to 96.900, provides a method by which a municipality may acquire an electric system within its boundaries. But we held in the former opinion in this case that while the city is proceeding in part under that Act it has the right to have the price determined by appraisal under the provisions of the franchise ordinance. The city, conceiving that the letters of the appraisers to the City Manager were in effect an appraisal, proposed to submit to the voters the question of purchase of the system. The purchase price submitted in the question was arrived at by making certain extensions to and deductions from the amounts listed in the letters of the appraisers. It is apparent that the determination of the purchase price by proper appraisal is a prerequisite to submission of the question of purchase to the voters. Since we have concluded that there has been no valid appraisal, it follows that there was no proposed purchase price which could have been submitted to the voters. The failure of the appraisers to include in their survey generating plant No. 2 and the transmission lines already referred to was an additional reason why we affirmed the judgment enjoining the submission of the proposed question.

We observe in conclusion that this litigation has lasted too long. Although there are many practical difficulties involved, the difficulties are not insurmountable. The city has a valid option to purchase the company's system and, if it desires to effect the purchase, the courts should lend their aid upon such terms as are equitable to both sides. We suggest that in the event other legal issues are raised, both the chancellor and this court should give immediate attention to determination of those issues to the end that this litigation may be terminated within the foreseeable future.

For the reasons stated, the judgments are affirmed on the appeals and the cross-appeals.