[No. 2870. Feb. 3, 1928.]

VALDEZ v. AZAR BROS.

[264 Pac. 962.]

Crampton & Darden, of Raton, for appellants.

J. Leahy, of Raton, for appellee.

### OPINION OF THE COURT

WATSON, J. ▉ This appeal is from a judgment of $1,250, recovered by the appellee, as administrator, for negligence of appellants, resulting in the death of Josefina Valdez, appellee's intestate.

By section 6 of the second amended complaint, it was alleged:

"That said defendants on said 14th day of June, 1921, had said horses hitched to said wagon for the purpose of delivering merchandise as aforesaid, and while said horses were so hitched to said wagon, the said defendants wrongfully, willfully, carelessly, and negligently left the said horses untied while so hitched to said wagon, upon a certain street and public highway in the said city of Raton, to wit, on East Cook avenue, and within the city limits of the said city of Raton, which is a municipal corporation, and said defendants at said time and place left said horses on said last-named street, untied and without making said horses fast with a good sufficient halter or hitching apparatus, and without any person having hold of them in any manner so as to prevent their running away, and then and there left said horses wholly untied and unattended by any person, contrary to the provisions of the ordinances of said city of Raton, and particularly contrary to, the provisions of section 9 of Ordinance 12 of said city, and which was then and there in effect, a copy of said section 9 being hereto attached, marked 'Exhibit 1,' and made a part of this complaint; and that by reason of said willfullness, wrongfulness, carelessness, and negligence of the said defendants as aforesaid and in the manner aforesaid the said horses then and there ran away and ran over and upon and trampled upon the said plaintiff's intestate as she was crossing from the north side of said

East Rio Grande avenue to the south side thereof, and at a point where she had the legal right to cross and which was the regular and legal place for her so to cross, and said horses then and there and thereby knocked plaintiff's intestate down and dragged her upon the ground and pulled said wagon over, upon, and across her body, and without contributory negligence on her part, by means of which and whereby plaintiff's intestate was then and there fatally injured, crushed, and bruised, in and upon her body, chest, abdomen, and back and vital organs; and plaintiff's intestate thence continually languished until the 16th day of June, 1921, when she died from said injuries, crushing, and bruising aforesaid."

The cause was tried without a jury, and the court made findings of fact and conclusions of law, among which were the following:

"(3) The court further finds that on the 14th day of June, 1921, the said defendants were the owners of a certain team and wagon, used by them in delivering goods in the city of Raton, a municipal corporation, situate in Colfax county and state of New Mexico, and that on said day the said defendants had said horses hitched to said wagon, in said city of Raton, and that said defendants wrongfully, willfully, carelessly, and negligently left the said horses, unattended by any person, upon a public street of said city of Raton, viz. East Cook avenue, and without tying or making said horses fast with a good and sufficient halter or hitching apparatus, whereby the said horses on said day ran away, while so hitched to said wagon, and that said horses ran over and upon and trampled upon the said Josefina Valdez, and dragged her upon the ground, and dragged the said wagon over and upon her while she was crossing over and upon a public crossing of said city of Raton, to wit, East Rio Grande avenue, inside the limits of said city; and that said horse thereby grievously crushed, bruised, and injured the said Josefina Valdez, and from which crushing, bruising, and injuries she thereafter died on the 16th day of June, 1921, and that said wrongful, willful, and negligent acts of defendants were the proximate and efficient cause of the death of plaintiff's intestate.

"(4) The court further finds that all of the material allegations of paragraph 6 of plaintiff's second amended complaint, have been substantially proven, and that said defendants, in leaving the said horses in the manner last aforesaid, did so in violation of Ordinance 12 of said city, and particularly section 9 of said ordinance, and that said section of ordinance was at the time in force and effect."

Section 9 of Ordinance 12, pleaded in the second amended complaint, is as follows:

"Any person who shall race horses, or who shall ride or drive any horse, team or other animal, through and upon the streets, within the limits of said city, at a speed or gait so rapid as to endanger persons, and any person who shall leave any horse or horses, or animal attached to any vehicle or conveyance in any street, alley or public place within said city without making such horse fast, with a good and sufficient halter, or other hitching apparatus, to

prevent their running away; and any person who shall ride or drive any team, horse or other animal upon or along any of the side walks or footways of the city, shall, upon conviction thereof, be punished by imprisonment in the county jail or city prison, for a period not exceeding thirty days, or by both such fine and imprisonment, in the discretion of the court."

This section 9 was received in evidence over the objection of appellants that it had been repealed by Ordinance 231, entitled "An ordinance regulating the traffic and travel on the public streets of the city of Raton." The latter is a comprehensive ordinance containing twenty-seven sections covering, generally, the subject-matter of the title. Section 25 thereof provides as follows:

"No horse or draft animals shall be allowed to be hitched to any tree or fire hydrant or light, telephone or telegraph pole; such horses or animals unless securely hitched shall carry a drop weight of not less than thirty pounds attached to the bridle bit in the mouth of such animal, unless such horse or animal is in the immediate and actual charge and control of a driver or attendant."

In the original opinion we overruled appellant's contention that section 9 of Ordinance 12 was repealed by implication by the adoption of Ordinance 231. We are now convinced that we fell into error in so holding, at least as the question affects this case. The opinion will therefore be withdrawn.

Whether Ordinance 231 "is so broad in its terms and so clear and explicit in its words as to show it was intended to cover the whole subject, and therefore, to displace the prior (ordinance) statute" (State ex rel. Board of County Commissioners v. Romero, 19 N. M. 1, 140 P. 1069), or is so comprehensive of the subject of "traffic and travel on the public streets of the city of Raton," as to evince an intent to displace all former legislation on the subject, are questions we need not consider. But one provision of section 9 of Ordinance 12 is here relied upon; namely, leaving horses "attached to any vehicle or conveyance in any street * * * within said city without making such horse(s) fast, with a good and sufficient halter, or other hitching apparatus, to prevent their running away. * * *" A later expression of the will of the city's legislative authority provides:

"* * * Such horses or animals unless securely hitched shall carry a drop weight of not less than thirty pounds attached to the bridle bit in the mouth of such animal, unless such horse or animal is in the immediate and actual charge and control of a driver or attendant."

This provision is controlling. Any former legislation repugnant to it must give way. Territory v. Matson, 16 N. M. 135, 113 P. 816; Earnest v. Sargent, 20 N. M. 427, 150 P. 1018.

Can the courts enforce both of these provisions at the same time? Both relate to the hitching of horses. Both constitute offenses against municipal authority. Both, under the rules of law, define negligence per se. The theory of the two provisions is different. Suppose a citizen had left his team unattended, but with a 30-pound drop weight attached to the bit. Under the earlier provision it was for court or jury to say whether, under the circumstances, such was a good and sufficient hitching apparatus. But, under the later provision, the law itself determines that question. The fact, if shown, is a complete defense, regardless of other circumstances, to a charge of violation of the ordinance, or to a claim of negligence per se. Hence it is impossible for these two provisions to stand together. They cannot be enforced as independent enactments. Upon the same state of facts a citizen is necessarily innocent under one, while he may be guilty under the other.

So we are constrained to hold that the court erred in admitting section 9 of Ordinance 12 over the objection that it had been repealed by Ordinance 231. If the whole of the section was not repealed, which we do not now decide, at least that part of the section material to the present claim of negligence had been repealed. The objection made was sufficient to direct the court's attention to the repeal.

As to the necessary consequences of this error, counsel disagree. The contention for appellants is that there is no negligence charged in the complaint, except violation of the ordinance. If that is true, appellants are right in demanding a reversal with direction to enter judg-

ment for them. But it is contended for appellee that the complaint charges common-law negligence. If that is true, it would seem that a reversal for the error pointed out would still leave appellee the right to a new trial. It is also contended for appellee that the judgment need not even be reversed, since the specific facts found by the court (finding 3, supra) are sufficient to sustain it on the theory of negligence at common law.

Appellee says that the first part of paragraph 6 of the complaint, down to "so as to prevent their running away," was intended and is sufficient to allege common-law negligence, and that the reiteration of practically the same specific facts as "contrary to the provisions of the ordinances," etc., was intended to allege negligence per se. Appellants do not argue that the first part of paragraph 6, if it stood alone, would be insufficient to allege common-law negligence. Apparently it would be. The specific facts there set forth, according to "a general concurrence of judicial opinion," seem to constitute "at least prima facie evidence of negligence." Thompson's Commentaries on the Law of Negligence, § 1294. But appellants argue that the paragraph, read as a whole, must be taken to count only on negligence per se for violation of ordinance. They submit these propositions:

(1) "Because the whole tenor of the pleading indicates it;" (2) "because, where general allegations are followed by specific allegations of negligence, the specific allegations control and limit the pleading to the act of negligence specifically alleged;" and (3) "because the rules of pleading require negligence predicated on common-law liability and negligence predicated upon violation of ordinances to be set up in separate counts."

As to the first proposition, we think appellee has the better of the argument. He has set forth specific facts as the basis of liability. He first alleges that they were negligently done. He then recites the same facts, less specifically it is true, but to the same substantial effect, as being in violation of an ordinance, which he pleads, and alleges to be in full force and effect. Admitting that the specific facts negligently done would sustain a judgment, regardless of any ordinance, we are unable to admit that a further pleading of the acts as violative of an ordinance lim-.

its the pleading to negligence per se. If violation of the ordinance alone was to be relied on, why the reiteration?

The second proposition stated, and the authorities cited thereunder do not seem to fit this case. We find no general allegations of negligence in this pleading. Certain specific acts are alleged to have been wrongfully, willfully, carelessly, and negligently done. They are also alleged to have been done in violation of an ordinance. It is the specific acts which must be relied on for recovery; whether they constitute negligence at common law, negligence because against the ordinance, or no negligence at all. In McManamee v. Missouri Pac. R. Co., 135 Mo. 440, 37 S. W. 119, cited by appellants, the plaintiff alleged that her husband was caused to be run over and killed through the negligence of defendant's servants in running, controlling, and managing the train. This was a general allegation of negligence. It was followed by a specification of failure to ring the bell, failure to have a watchman at the crossing, and running faster than six miles an hour—all of which, it was pleaded, were in violation of an ordinance. Under that pleading it was held that the plaintiff was not entitled to have a submission of commonlaw negligence. Its general allegation was controlled and limited by its specific allegations, which were all acts not necessarily negligent except as prohibited by ordinance. The difference between that pleading and this is plain.

As to the third proposition: Where several causes of action are united in a complaint, they should be separately stated, with the relief sought for each, so they "may be intelligently distinguished." Code 1915, § 4105. But it is to be doubted if there are several causes of action in the present complaint. There is but one set of facts. But one recovery could be had. The damages are the same. The only difference is one of theory. A complaint must contain "a statement of the facts constituting the cause of action, in ordinary and concise language." Code 1915, § 4104. But the Code does not require the pleader to set forth the theory on which he relies. Appellants cite Creen v. Michigan R. Co., 168 Mich. 104, 133 N. W. 956, and the appended case note at Ann. Cas. 1913C, 101.

While it is said in that case to be "a generally recognized rule of pleading that breaches of duty imposed by the common law and breaches of statutory duty, while chargeable in a single action, should be embodied in separate courts," the statement seems to be obiter, since the pleading there under criticism was formulated in accordance with that principle. Moreover, Michigan is a commonlaw state; not a safe guide for us on questions of pleading. The author of the note referred to says that such is the general rule, and cites, in addition to some federal cases, a number of cases from Mississippi, and discusses at length, the rule in Alabama, which seems to be to the same effect. He points out, however, that such is not the rule in Colorado, and that, according to the later cases in Missouri and in New York the rule is otherwise. A decision of the point is unnecessary in this case and will be reserved. Even if this were deemed a case of improper intermingling of two causes of action, the objection could not be made at this stage. A timely objection might have been made by motion to make more definite and certain. Porter v. Alamocitos Land & Stock Co., 32 N. M. 344, 256 P. 179.

We have now considered appellants' propositions separately. Their joint effect is no greater. In the absence of timely action to require a pleader to formulate his allegations strictly according to the Code requirements, we think court and counsel must take notice of every theory of recovery the allegations will support.

So, for the present case at least, we consider that the complaint itself would have sustained a judgment on the theory of negligence at the common law.

This brings us to the question whether the trial court rendered such a judgment. Finding 3, in some respects, quite resembles the complaint. If the complaint is sufficient, why not the finding?

Appellee's contention amounts to an assertion that the reception of section 9 of Ordinance 12 was harmless error. We have often held that in a trial to the court the reception of improper evidence is harmless if it had no bearing on the result. But can it be said to have had no

bearing on the result? Clearly the court, being of opinion that section 9 of Ordinance 12 was in full force and effect, rendered judgment upon the theory of negligence per se. That would not be fatal, however, if he had also planted the judgment on a correct theory. Mitchell v. McClutcheon, 33 N. M. 78, 260 P. 1086. While the specific facts alleged make a prima facie case of negligence under the authority above cited, they 'do not constitute negligence as a matter of law. Thompson's Commentaries on the Law of Negligence, § 1295. Whether such acts are negligence in a particular case is a jury question. A particular case will involve the surrounding circumstances and facts; for instance, the ages, dispositions, training, and past records of the horses, the character of the street as to the amount and kind of traffic, and the likelihood of any occurrence to frighten the horses. If the trial court had adverted to any such circumstances, so as to indicate that he viewed the decision to be made as one of fact, the judgment might perhaps be sustained. But he rests his conclusion solely upon acts not negligent as matter of law, and then only in connection with the erroneously found fact that an ordinance exists prohibiting them. It would be unreasonable to conclude that the judgment was intended as an adjudication of liability for common-law negligence.

We hold, therefore, that the judgment should be reversed, and the cause remanded, with direction to grant a new trial. It is so ordered.

PARKER, C. J., and BICKLEY, J., concur.