LAKE SUPERIOR DISTRICT POWER COMPANY, Appellant, vs. PUBLIC SERVICE COMMISSION and another, Respondents.

*September 12—October 8, 1940.*

668

For the appellant there were briefs by *Sanborn, Blake & Aberg* and *Glen H. Bell,* all of Madison, and oral argument by *Mr. C. E. Blake* and *Mr. Bell.*

For the respondent Public Service Commission there was a brief by the *Attorney General,* and *H. H. Persons* and *H. T. Ferguson,* assistant attorneys general, and *Philip H. Porter,* chief counsel, and oral argument by *Mr. Ferguson* and *Mr. Persons.*

For the respondent city of Medford there was a brief by *Roberts, Roe & Boardman* of Madison, and *E. J. Neuenschwander,* city attorney, and oral argument by *Glenn D. Roberts* and *Gordon Sinykin* of Madison.

ROSENBERRY, C. J.   On April 3, 1935, the common council of the city of Medford adopted a resolution which provided for holding a referendum election on April 23, 1935, upon the question of acquiring the property of the plaintiff utility.   Nothing was done pursuant to that resolution.   On April 16, 1935, the council adopted the following resolution:

"A resolution to provide for the purchase of the property of the Lake Superior District Power Company in the city of Medford actually used and useful for the convenience of the public in the distribution of electrical energy in the city of Medford.

"The common council of the city of Medford hereby resolves as follows:

"That the city of Medford purchase the property of the Lake Superior District Power Company, which is necessary for and used and useful for the distribution of electrical energy in the city of Medford.

"Be it further resolved that the question as to whether the city of Medford shall purchase said electric distribution system from the Lake Superior District Power Company shall be submitted to a referendum vote of the electors of said city, the said election to be held on the 7th day of May, A. D. 1935, the said question to be voted as follows:

" 'Shall the city of Medford purchase the Medford Public Utility of the Lake Superior District Power Company, which is necessary for and used and useful for the distribution of electrical energy in the city.'

"Be it further resolved that notice of this referendum shall be given by the city clerk in the manner provided by law."

On April 18, 1935, and April 25, 1935, a notice of referendum election was published in which the question upon which the vote was to be taken was stated as follows:

"Shall the city of Medford purchase the property of the Lake Superior District Power Company actually used and useful for the convenience of the public served by said Lake Superior District Power Company operating as a public utility under an indeterminate permit in the city of Medford?"

There was a vigorous campaign, 850 votes were cast, 440 of whom voted "Yes," 401 voted "No," and five were blank. Nothing further was done until November 15, 1935, when the city clerk of Medford filed with the commission a certificate setting forth the fact of the referendum election, stating the question submitted to the voters and the result of the election. The first hearing (sec. 197.05, Stats.) in the proceeding was held on July 15, 1936, at which time counsel for the plaintiff moved to dismiss the proceeding

for the reason that the commission was without jurisdiction because of the failure of the city of Medford to comply with the requirements of ch. 197, Stats. The motion was denied, and upon appeal from the ruling of the examiner, the commission determined,—

"that while the procedure may have been somewhat irregular, the departure was not sufficiently basic to place upon the commission responsibility for dismissing these proceedings."

The ruling of the examiner was sustained. There were further hearings, and on September 28, 1937, the commission entered its order fixing the amount of compensation and the terms and conditions for acquisition of the property described in the order by the city.

The following property in the city of Medford was excluded from the acquisition proceedings by the commission's order:

(a) A transformer substation, (b) the local plant operator's house, (c) the local manager's house, (d) an undivided interest in that part of the company's transmission line which was built to serve the city of Medford.

A rehearing was granted, and upon the rehearing the commission on November 29, 1937, entered an order affirming and approving its original order of September 28, 1937. Thereupon plaintiff commenced this action to set aside and vacate the orders of September 28, 1937, and November 29, 1937, or in the alternative that the orders be made lawful and reasonable. The trial court found:

"(1) That in and by the referendum election held in the city of Medford on May 7, 1935, the defendant city determined, pursuant to its rights under the indeterminate permit under which said plaintiff was operating as a public utility on that date, to acquire the property of said plaintiff subject to acquisition under said indeterminate permit.

"(2) I find that in and by the order under review in this action the defendant commission correctly determined the property subject to acquisition by said defendant city under said indeterminate permit;"—

and concluded as a matter of law that the terms and conditions for the acquisition of the property of the plaintiff as fixed by the commission are reasonable and should be approved.

The plaintiff contends that the proceeding initiated by the city of Medford by adoption of the resolution on April 16th was for a negotiated purchase of the utility distribution system within the city and not for an adversary acquisition of the used and useful property. The plaintiff rests this contention upon the language of the resolution and the publicity which accompanied the presentation of the question to the electors of the city of Medford. In its consideration of the matter the plaintiff ignores the recitals which accompanied the resolution. These recitals are a part of the resolution, and such recitals ordinarily either state the facts upon which the resolution is based or declare the purpose for which it is to be adopted or both. In the recitals it is declared that the resolution is to provide for the purchase of the property of the Lake Superior District Power Company in the city of Medford *actually used and useful for the convenience of the public.* This is the language of sec. 197.01 (3), Stats., and not that of sec. 66.06 (8). Inasmuch as under the provisions of sec. 66.06 (8) (b), the resolution submitted must specify the method of payment and no such method was specified either in the resolution adopted or in the question submitted, we see no ground for claiming that this is a proceeding under sec. 66.06 (8) (b). The plaintiff argues that the procedure followed by the city in this case indicates some sort of combination of the two methods provided by sec. 66.06 (8) and sec. 197.01 (2) for a negotiated purchase. Sec. 197.01

(2) provides that any municipality shall have the power, subject to the provisions of chs. 196 and 197, *to purchase any public utility or any part thereof.* It does not use the limiting words "actually used and useful for the convenience of the public."

It is considered that the contention of the plaintiff that the city initiated a proceeding for a negotiated purchase instead of an acquisition pursuant to sec. 197.01 (3), Stats., is not well taken. The language of the resolution and the fact that all steps taken subsequent to its adoption were in accordance with the provisions relating to an acquisition as distinguished from a purchase confirms this conclusion. There is no contention that anyone was misled by the use of the word "purchase" instead of the word "acquire" in the resolution. As a matter of fact, the plaintiff concedes that the use of the word "purchase" may not be controlling because of the indiscriminate use of the words "purchase" and "acquisition" in the statutes. See *Wisconsin P. & L. Co. v. Public Service Comm.* (1939) 231 Wis. 390, 284 N. W. 586, 286 N. W. 392.

The trial court was not in error in holding that the proceeding was under sec. 197.01 (3), Stats.

In considering plaintiff's contention that the order of the commission unlawfully excluded certain parts of the property of the utility situated in the city of Medford, we are met with the argument that this question presents a question of law rather than one of fact, and for that reason the determination of the commission is not controlling. By the provisions of sec. 196.41, Stats., made a part by reference of ch. 197 (sec. 197.06), the reviewing court may vacate and set aside an order on the ground that it is unlawful or unreasonable.

In *Wisconsin P. & L. Co. v. Public Service Comm.,* supra (p. 408), it was held that the determination of what property belonging to the utility was used and useful was

a question of fact but the matter was not discussed. The argument made in support of the contention is that the facts relating to the property of the utility, that is, as to what constitutes its property, being undisputed, the determination of what is used and useful presents a question of law and not of fact. Plaintiff concedes that whether a conclusion drawn from evidentiary matter is one of law or of fact depends on whether it is reached by reasoning or application of rules of law, as held in *Weigell v. Gregg* (1915), 161 Wis. 413, 154 N. W. 645; *Weyauwega v. Industrial Comm.* (1923) 180 Wis. 168, 192 N. W. 452.

Whether certain property owned by the utility serving the city of Medford was used and useful for the convenience of the public cannot be determined by the application of any principle of law of which we are aware. While it is true that property might be included which was clearly not useful, such inclusion would be unreasonable, not unlawful. The determination of what is used and useful certainly involves more of an engineering or operating problem than a question of law. It is only when the finding of the commission is of such a character that the court can clearly say that it is unreasonable, that the finding of the commission can be set aside. It is not unlawful, because the commission clearly has the power to make the determination. It would seem to be clear that the local operator's house, the local manager's home, and an interest in the power line that serves the city are not property that is useful to the city in the operation of the distribution system. The utility if acquired by the city will be under the control of a board who no doubt will operate through a local manager, and the determination that they are not useful in connection with the distribution system certainly cannot be held to be unreasonable. The claim that the city must acquire an interest in the power line that serves the city would, if allowed, in effect, compel the city to continue to purchase power from

the plaintiff. If it does not purchase such power an interest in the power line would be of no use to it. Whether the substation property should be included is a closer question, but its usefulness to the city depends upon whether the city produces its own current or purchases it from the plaintiff. We see no ground upon which it can be said that the determination of the commission is either unlawful or unreasonable, and the trial court correctly so held.

*By the Court.*—The judgment appealed from is affirmed.