312 P.2d 83

Grace H. TAUCH, Ancillary Executrix of the Estate of John Stanton Meyer, deceased, Plaintiff,

Consolidated Lloyds, a corporation, Intervenor,

James Levi Cunningham, Ancillary Administrator of the Estate of Stewart James Cunningham, deceased, Plaintiff,

Henry W. Ryan, Ancillary Administrator of the Estate of Clyde Dale Brittan, deceased, Plaintiff, Appellees,

v.

FERGUSON–STEERE MOTOR COMPANY, a corporation, Defendant, Appellant.

No. 6156 (Nos. 5817, 5847, 5959).

Supreme Court of New Mexico.

May 14, 1957.

Rehearing Denied June 20, 1957.

430

Merritt W. Oldaker, Roy F. Miller, Jr., William H. Oldaker, Albuquerque, for appellant.

John H. Lawless, Jr., Alamogordo, Andress, Lipscomb, Peticolas & Fisk, El Paso, Tex., for appellees.

SADLER, Justice.

We are asked to decide whether the personal representative of a decedent, suffering wrongful death within the purview of 1953 Comp., § 22–20–4, who was over 21 years of age at the time of his death, unmarried, and left surviving him no wife, child or children, or other named and described dependent person (kindred) enumerated in said section, may recover the stipulated damage therein authorized.

The accident out of which arose the three causes of action involved on this appeal occurred in Otero County, New Mexico, on November 22, 1953, in a collision between a tractor-trailer combination owned and operated by defendant (appellant) Ferguson-Steere Motor Company, a corporation, and a Ford convertible occupied by the three decedents and another young man all of whom suffered instant death in the collision.

The four young men in the convertible had been skiing at Ruidoso and were en route back to El Paso via Alamogordo when the collision took place, on Highway No. 70, as the Ford was ascending and the tractor-trailer descending the steep and winding grade into what is known as Dark Canyon, about 8 miles south of Ruidoso. The condition of the road was hazardous at the time, not alone because of the sharp grade and curves but, as well, due to the presence of iced conditions on the highway. With this brief background, we will add mention of the fact that Ferguson-Steere Motor Company, at the time of the accident, was a common carrier within the meaning of the statute mentioned.

Accordingly, we shall proceed with a discussion of the question posed in the opening paragraph of this opinion. As may be inferred from the three separate docket numbers given above, the appeals are consolidated before us for consideration and decision.

The statute under which recovery is sought is 1953 Comp., § 22–20–4. It reads, so far as material to our decision, as follows:

"Whenever any person shall die from any injury resulting from, or occasioned by the negligence, unskillfulness or criminal intent of any officer, agent, servant or employee, whilst running, conducting or managing any locomotive, car, or train of cars, or of any driver of any state (stage) coach or other public conveyance, while in charge of the same as driver; * * * the corporation, * * * in whose em-

ploy any such * * * driver, shall be at the time such injury was committed, or who owns any such * * * public conveyance, at the time any injury is received, * * * shall forfeit and pay for every person or passenger so dying, the sum of ten thousand dollars ($10,000), which may be sued and recovered; first, by the husband or wife of the deceased; or second, if there be no husband or wife, or if he or she fails to sue within six (6) months after such death then by the minor child or children of the deceased; or third, if such deceased be a minor and unmarried, then by the father and mother; or fourth, if the deceased be over twenty-one (21) years of age and unmarried, by a dependent father or mother or dependent brother or sister, who may join in the suit; and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor. *In the event there are no such persons entitled to sue or in the event suit is not brought by any such persons within nine (9) months after such death, suit may be brought by the personal representative or representatives of such deceased person."* (Emphasis added.)

It should be stated at this point that the foregoing statute was enacted originally as section one (1) of L.1882, c. 61. The first amendment enacted touching it was by L.1931, c. 19, by which the amount of recovery was raised from $5,000 to $7,500; and, in listing the beneficiaries who could sue for any recovery there was added the italicized portion of the following:

"* * * *or fourth, if the deceased be over twenty-one years of age and unmarried, by a dependent father or mother or dependent brother or sister, who may join in the suit; and each shall have an equal interest in the judgment; or if either of them be dead, then by the survivor."*

So this section of the statute stood, as originally enacted, from 1882 until 1931, when the amendment just set out was added. Then, some sixteen years later, the second pertinent amendment was added as L.1947, c. 125, § 1. It raised the amount of recovery authorized to $10,000 and otherwise as is italicized above in the copy of material portions of the section discussed, reading as follows:

"In the event there are no such persons entitled to sue or in the event suit is not brought by any such persons within nine (9) months after such death, suit may be brought by the personal representative or representatives of such deceased person."

Thus it is that the statute construed, under which recovery was had in the three actions whose judgments are before us for review on these appeals, consolidated, is in the form appearing as § 22–20–4, supra.

The amendments mentioned are carried forward into the section as it appears in the 1953 Compilation. So much for a historical treatment of the death by wrongful act statute as applied to common carriers. Counsel for defendant is pleased to refer to it as the "special" statute to distinguish it from the companion statute enacted originally as sections 2 and 3 of the same act, L.1882, c. 61, §§ 2 and 3 (1953 Comp., §§ 22–20–1 and 22–20–3), giving a right of action for wrongful death caused by another, not a common carrier, which the same counsel seem pleased to refer to as the "general" wrongful death statute.

Keeping in mind that this so-called "general" statute was enacted as a part or parcel of the same act imposing liability for wrongful death caused by a common carrier, it becomes important to examine these statutes, being separate sections of the same act, which created the cause of action, or, better said, right of survivorship, first mentioned. Sections 2 and 3 of L.1882, chapter 61, first provide for the survivorship of the cause of action where the death by wrongful act was caused by an individual, or by another than a common carrier. As originally enacted the sections read:

"Sec. 2. Whenever the death of the person shall be caused by a wrongful act, neglect or default of another, and the act or neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the corporation which would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured.

"Sec. 3. All damages accruing under the last preceding section shall be sued for and recovered by the same parties and in the same manner as provided in section 1 of this act, and in every such action the jury may give such damages, not exceeding five thousand dollars, as they may deem fair and just, with reference to the necessary injury resulting from such death, to the surviving parties, who may be entitled to sue, and also having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default."

After the enactment of L.1882, c. 61, embracing the two sections just set out, and as well, section 1 providing survivorship of causes of action for death by wrongful act by common carriers, the legislature amended both sections 2 and 3 of L.1882, c. 61. The only amendment of section 2 was by rendering the act applicable "although such (wrongful) death shall have been caused under such circumstances as amount in law to a felony," thus placing that section in the exact form we now find it, 1953 Comp., § 22–20–1.

Section 3 of L.1882, c. 61, was amended in much more extensive fashion, however, by L.1891, c. 49. It changed entirely the amount recoverable under the act which previously imposed as a maximum amount the sum of $5,000. In addition, it authorized suit in the name of the personal representative of decedent, exempted the amount of any recovery from liability for debts of decedent, provided he left any one of several named kindred him surviving, then to be distributed to named kindred as a class in varying contingencies; and, finally, if none of the named kin were found, "then the proceeds of such judgment shall be disposed of in the manner authorized by law for the disposition of the personal property of deceased persons."

All of the amendments to sections 2 and 3 of L.1882, c. 61, next above mentioned, were accomplished by L.1891, c. 49, §§ 1 and 2, save and except provision by L.1939, c. 105, § 1, for a further alternative contingency, namely:

"* * * if such deceased be a minor, childless and unmarried, then to the father and mother, who shall have an equal interest in the judgment, or if either of them be dead, then to the survivor; if there be no father, mother, husband, wife, child, or grandchild," then, etc.

The current form of L.1882, c. 61, § 3, with the amendments noted carried forward, is to be found as 1953 Comp., § 22-20-3. It will be noted that these statutes, all as amended, supra, were in effect in the form found in 1953 Compilation at the time of the accident which resulted in the deaths of the three decedents involved in the consolidated appeals before us.

The basic question presented by defendant (appellant) for our consideration, contained in its Point No. 1, is that the plaintiff in each of the appeals before us, which have been consolidated for consideration and decision, lacks capacity under the controlling act to sue. The argument is that the stipulation entered into at the trial precludes them from maintaining the action. So far as material to this contention the stipulation recites that each plaintiff, at the time of his death was over the age of 21 years, unmarried, and did not have "surviving him at his death any heirs, or other persons, dependent upon him, partially or totally, for their support and maintenance, within the purview and intendment of Section 22-20-4, N.M.S.A., 1953 Comp."

The stipulation went on to recite, however, that each plaintiff left surviving him certain heirs, to wit, a mother in all three cases, a father as well in two instances, and a half-brother in one and a full brother in still another of the cases.

Thus it is that the defendant placing full and complete reliance, so far as capacity to sue is concerned, on the portion of the act confining the right of action to a *dependent* father or mother, prior to the amendment

added by L.1947, c. 125, § 1, waives aside the language of this amendment and invokes the language of the stipulation to prove its point. In other words, say counsel for defendant, even though there be a father or mother, and other named heirs, surviving each plaintiff as possible beneficiaries of any recovery, there can be no such recovery by any of them, or for them, for the simple reason a lack of dependency on the part of any such denies capacity to sue.

So it did, prior to the 1947 amendment, under the reasoning employed in Romero v. Atchison T. & S. F. Ry. Co., 11 N.M. 679, 72 P. 37, as counsel for the plaintiffs obligingly agree. But they follow up by contending it was for the very purpose of filling this heartless gap in the law, and placing actions for wrongful death against common carriers on a parity with recoveries under the companion legislation providing actions for wrongful death against individuals and others not common carriers, that the legislature in 1947, added the final sentence found in 1953 Comp., § 22–20–4. The amendment authorizes a suit by the personal representative of decedent, in the event none of the named kindred entitled to sue exist, or if they do, should fail to sue within nine months after death of a decedent wrongfully killed by the defendant.

 The early cases under our wrongful death statutes pointed out that, basically, the authority to recover damages for wrong-

ful death granted by such statutes has for its purpose more than compensation. Fundamentally, it is designed as well to promote the safety of life and limb by making it costly for the wrongdoer. In Whitmer v. El Paso & S. W. Company, 5 Cir., 201 F. 193, 198, the court had before it our so-called general statute, 1953 Comp., §§ 22–20–1 and 22–20–3. Commenting on the purpose of such statutes, the court said:

"The statutes allowing damages for wrongful act or neglect causing death have for their purpose more than compensation. It is intended by them, also, to promote safety of life and limb, by making negligence that causes death costly to the wrongdoer."

In Hogsett v. Hanna, 41 N.M. 22, 63 P. 2d 540, we quoted approvingly from a withdrawn opinion of Mr. Justice Watson, in Valdez v. Azar Bros., 33 N.M. 230, 264 P. 962, which indicated our acquiescence in this theory of the death by wrongful act statutes. The withdrawn opinion, abandoned for reasons foreign to this point, cited the Whitmer case, supra, quoted approvingly the excerpt therefrom set out, next above, and then went on to say, all as set out in Hogsett v. Hanna, supra, the following, to wit:

"A careful reading of the sections under consideration suggests that the first thought of the legislature was to create a cause of action against a culpable party. It gave secondary con-

sideration to the distribution of the proceeds of the judgment. It did not intend to relieve the tort feasor from liability in any event." [41 N.M. 22, 63 P. 2d 545.]

True enough, in the quotations from the Whitmer case and Hogsett v. Hanna, supra, the courts mentioned were dealing with the general death statute rather than the special statute governing as to common carriers. The reasoning, however, is as applicable to the one as to the other. Ickes v. Brimhall, 42 N.M. 412, 79 P.2d 942.

But, say counsel for the defendant, the provision in the 1947 amendment is meaningless and accomplishes nothing by reason of its failure to direct distribution of any recovery by the personal representative of a decedent, as was done in the case of recoveries by such a representative under the general death statute, 1953 Comp., § 22–20–3. This argument is not persuasive. It is not to be supposed the legislature was unmindful of our statutes of descent and distribution, or forgetful of their operation on personal estate in the hands of a personal representative, following death. A statute designed to remedy an existing evil is not to be stricken down on such hollow reasoning as this. Compare, Youree v. Ellis, 58 N.M. 30, 265 P.2d 354. See, also, Fowler v. Corlett, 56 N.M. 430, 244 P.2d 1122.

Although, the final amendment of the special statute, governing as to common carriers, L.1955, c. 270, lifting from the act the maximum amount recoverable, cannot control the rights of the parties to this appeal, it is worthy of notice that the critical language assailed, authorizing suit by a personal representative in certain contingencies, is again carried forward as an integral part of the act.

It would be to defeat a major purpose of legislative intent, viz., to insure that for every wrongful death within the purview of the act, there should be a permissible recovery, to hold the 1947 amendment authorizing recovery by decedent's personal representative is meaningless and nugatory. We hold it is not so.

The position of the defendant is well stated on the point being discussed by quoting this excerpt from its brief in chief, to wit:

"This point of the Appeal, the last sentence of the aforesaid statutory section notwithstanding, is predicated upon the hypothesis that if the deceased be over the age of 21 years, unmarried, and leave no dependent mother, father, brother or sister, there can be no recovery; that by virtue of the last sentence (the 1947 amendment authorizing suit by personal representative), the statute is made unenforceable and is unconstitutional for the reason that upon recovery of the proceeds, there is no one entitled to take, which, in effect, gives rise to a patent ambiguity in the statute and constitutes the taking of property without due process of law."

We have inserted the parenthetical language, after the word "sentence," to identify portion of the statute referred to.

In contrast, counsel for the plaintiffs graphically describe their position in a supplemental memorandum filed herein, calling to our attention the Missouri case of Cummins v. Kansas City Public Service Co., 334 Mo. 672, 66 S.W.2d 920 (from which state we adopted our wrongful death statute), as follows:

"Appellees take the position that under the common carrier wrongful death statute, Section 22–20–4, N.M.S.A., 1953 Comp., as it existed prior to the 1947 amendment, and as construed by Romero v. Atchison T. & S. F. Ry. Co., 11 N.M. 679, 72 P. 37, the law of New Mexico was such the adult son of parents could be killed by a common carrier in New Mexico and if they were not at that exact time dependent on such son the common carrier who killed the deceased would not be liable in damages and the parent would be under the obligation to take the carcass of their son off the highway, spend the money to bury it, and neither the other relatives, the creditors, the parents nor anyone could make any recovery from the common carrier whose wrongful negligence killed such deceased. The 1947 amendment, we think, was enacted for the purpose of providing a remedy for

this unjust, cold-blooded situation that existed prior to its enactment."

Without absorbing the heat of counsel's language in their statement of plaintiffs' position we, nevertheless, think the two statements of adverse counsel give a clear exposition of their opposite thinking on the subject discussed. Furthermore, we incline more to the rationale of the views expressed by plaintiffs' counsel, as representing a plausible explanation for enactment of the 1947 amendment.

■ Holding, as we do, that the 1947 amendment is not to be ignored, the further contention of counsel for defendant that the statute is unconstitutional and void, for want of a taker under it, loses much of its force. The likelihood of an escheat to the state will be no greater here than in the case of decedents, generally, who die without heirs, yet leave estate for distribution. Anyhow, a solemn enactment of the legislature is not to be nullified by possibilities so remote as the happening of conditions producing an escheat. As we said in Henkel v. Hood, 49 N.M. 45, 156 P.2d 790, 793, discussing the general statute authorizing recovery by a personal representative for death by wrongful act:

"The instances in which a decedent dies heirless are so rare as to be infinitesimal in number."

So much for the major question submitted, viz., the right of the personal representatives of the decedents to sue. They

have that right. It is conferred upon them by L.1947, c. 125, and found in 1953 Comp., § 22–20–4. Accordingly, we shall now turn our attention to other claims of error presented by defendant, which presuppose validity of the act involved.

■ At the trial when both parties had rested, it was ruled by the court there was insufficient evidence of negligence on the part of plaintiffs, to warrant submission of the issue of contributory negligence to the jury. This ruling is assigned as error by the defendant and strenuously argued as the second point relied upon for reversal. The position of counsel for the plaintiffs on the question is twofold in character. First, they say the trial court was correct in denying the defendant's request for instructions on the subject because those requested did not correctly state the law. But, even if they should be wrong in the contention, they insist the trial court correctly refused to submit the issue for the fundamental reason that there was a complete lack of evidence warranting its submission. With the latter contention, we are compelled to agree, thus relieving us of the necessity of considering the first contention.

■ There were no eyewitnesses to the tragic accident which resulted in the instant deaths of the four young men riding in the Meyer car and apparently being driven by him. The burden of establishing contributory negligence on the driver of that car, or of any of its occupants, of course, was on the defendant. Williams v. City of Hobbs, 56 N.M. 733, 249 P.2d 765. This the defendant wholly failed to do. Two state police officers, Driggers and Tafoya, from markings on the ground and a view of the scene of the accident made shortly after it occurred, placed the Meyer car on its right side of the road or highway at the time of the accident.

Testimony of another witness, Iverson, whose car passed the Meyer car going in an opposite direction only an instant before the collision, was that there was nothing unusual in the way it was being operated and that the collision occurred while the Meyer car was on its right side of the highway.

Indeed, Iverson had observed the defendant's tractor and trailer approaching at a rapid speed through his rear view mirror, on the very eve of the collision. Actually, his own car was struck by the Ferguson-Steere tractor-trailer truck and knocked some 50 feet to the left of the highway and down into the ditch some 30 feet. He heard a crash just before he was hit but did not see the collision. The only witness for the defendant at the scene of the accident was the driver of the Ferguson-Steere machine, Hodges. He testified that he did not see the Meyer car, indeed, he did not see the collision itself.

The defendant was compelled to rely upon photographs taken at scene of the accident, following the collision and observa-

tions made of the tractor and trailer after it had traveled from 150 to 180 feet from the point of collision. In the meantime, during which period it had collided with the Iverson car and the trailer had rolled a considerable distance over rocks and boulders, necessary adjustments had been made to the trailer hitch, the tractor-trailer reassembled and moved many miles from scene of the accident to Artesia, New Mexico. There it was viewed, observations deduced and made the basis of testimony as to how the accident might have happened. We have carefully reviewed the pertinent testimony on the issue, any detailed narration of which would extend this opinion beyond all reasonable bounds. Suffice it to say, it is our considered judgment there, positively, was no competent testimony for the jury to consider touching any actionable negligence on the part of the plaintiffs. Hence, the trial court properly refused to submit the issue of contributory negligence.

▇ It is next claimed the trial court erred in failing to declare a mistrial, or to grant a new trial, because of admissions by a certain witness of prejudice, while on the stand. Captain Tafoya was one of two state police officers who arrived on the scene of the accident soon after it occurred. Both appeared as witnesses for the plaintiffs. During heated cross-examinations of Captain Tafoya, and on two different occasions, he admitted prejudice against the de-

fendant. Once following a spirited exchange between defense counsel and him as to why he had not replied to a letter from counsel regarding a tachograph chart taken from defendant's truck at scene of the accident, the following exchange took place, to wit:

"Q. It was your responsibility, when you removed other people's property, to see that it's returned to them, isn't that correct? A. I gave that to the District Attorney, sir.

"Q. Why did you not answer my letter? A. I didn't see any use in answering your letter because the tachograph was not in my possession.

"Q. You've been prejudiced throughout this entire matter towards Ferguson-Steere, have you not? A. Certainly I have."

Again, and following a like heated colloquy between the same defense counsel and Captain Tafoya, the former taunted him with a certain inquiry and was answered as follows:

"Q. Is it not true, Captain Tafoya, that your testimony here today has been aimed at being as favorable to the plaintiffs as possible? A. I told you I was prejudiced this morning, yes, sir.

"Mr. Miller: No further questions."

We see no error on the part of the trial court as to this matter. If the answers of the witness were of a character warranting declaration of a mistrial, as we think they

were not, it was incumbent on defendant to ask for same when the admissions of prejudice were made. Counsel could not remain silent, gamble on result of the trial, and after suffering an adverse verdict, raise this as the basis for a new trial.

■ That the testimony of a witness, interested or disinterested, may not be arbitrarily disregarded, seems well established. Medler v. Henry, 44 N.M. 275, 101 P.2d 398; Citizens Finance Co. v. Cole, 47 N.M. 73, 134 P.2d 550; and, Heron v. Gaylor, 52 N.M. 23, 190 P.2d 208. Its force may be effectively weakened by severe cross-examination but, whether so or not, it may not be made the basis for awarding a mistrial, unless so inherently improbable as to be unworthy of belief. Even then, the new trial granted is not because the witness' testimony displayed bias or prejudice but because his testimony was incredible and inherently improbable. See, State v. Armijo, 35 N.M. 543, 2 P.2d 1075 (on rehearing). Here no notice was taken of the testimony when given and the point now urged was raised for first time on motion for new trial. The objection comes too late, if it were otherwise meritorious.

■ It is also claimed the trial court erred in failing to submit certain special interrogatories requested by defendant. This was a matter within the discretion of the trial court and we see no abuse of that discretion. American Ins. Co. v. Foutz & Bursum, 60 N.M. 351, 291 P.2d 1081.

Other claims of error are presented and argued but we find no prejudicial error committed against defendant in the trial court's rulings as to any of them. It would unduly extend this opinion to attempt to discuss and rule upon each in detail. We think the judgment rendered is free from error and should be affirmed.

It will be so ordered.

LUJAN, C. J., and McGHEE, COMPTON and KIKER, JJ., concur.