503 P.2d 310

**SOUTHERN UNION GAS COMPANY, Petitioner-Appellee and Cross-Appellant,**

v.

**NEW MEXICO PUBLIC SERVICE COMMISSION, Respondent-Appellant and Cross-Appellee.**

No. 9486.

Supreme Court of New Mexico.

Nov. 22, 1972.

David L. Norvell, Atty. Gen., James L. Parmelee, Jr., Agency Asst. Atty. Gen., Santa Fe, for defendant-appellant.

Montgomery, Federici, Andrews, Hannahs & Morris, William R. Federici, Sumner G. Buell, Seth D. Montgomery, Santa Fe, A. S. Grenier, Strasburger, Price, Kelton, Martin & Unis, Leo J. Hoffman, Dallas, Tex., for plaintiff-appellee.

Frank R. Coppler, New Mexico Municipal League, Santa Fe, amicus curiae.

## OPINION

McMANUS, Justice.

Southern Union Gas Company, hereinafter referred to as "the Company," appellee and cross-appellant, petitioned the New Mexico Public Service Commission, hereinafter referred to as "the Commission," appellant and cross-appellee, for a rate increase. After the Commission issued its order denying the rate increase, the Company sought a statutory review proceeding in the Santa Fe County District Court. That court entered findings of fact and conclusions of law and held the Commission's order null and void as being unreasonable and unlawful. The Company cross appealed on two issues.

The legislature has established certain goals which utility regulation and supervision are intended to achieve: reasonable and proper services should be made available to the public at fair, just and reasonable rates, and capital and investment should be encouraged and attracted for the plants and facilities which are to render that service. § 68-3-1(B), N.M.S.A.1953. Further, the legislature has allowed the Commission great flexibility in the methods to be used in achieving those goals. It is within the context of these general observations that we proceed to resolve the issues presented by this appeal. Our review will be limited to a determination of whether the Commission's order was unreasonable or unlawful as held by the district court. § 68-9-5, N.M.S.A.1953.

In general, there are five areas of the order which must be discussed: (1) the method used to trend items in the Company's general plant account to determine their reproduction cost; (2) the method used to determine how much depreciation should be applied to the reproduction cost of much of the Company's property, (3) the method used to determine what rate of return the Company should have, (4) the exclusion of $673,574 of construction work in progress from the Company's rate base, and (5) the deduction from rate base of the Company's reserve for deferred taxes.

Section 68–6–7(D), N.M.S.A.1953, states that if the Commission finds the Company's proposed rates to be unjust, unreasonable or in violation of the law, the Commission shall determine the just and reasonable rates. Thus, when necessary, we will first determine whether the Commission is correct in not accepting the Company's method and, secondly, whether the method substituted by the Commission is acceptable.

## TRENDING

■ The Company proposed to trend the general plant account items by using a nationally recognized index, Handy-Whitman, which was generally suited for determining reproduction costs. General plant account items are those items which cover desks, chairs, typewriters, office supplies, etc. There was a reason why the index was not accepted by the Commission. The index did not list trend factors for general plant accounts, nor did the authors of the index recommend the use of their indices for such accounts. Both the Commission and the Company agree on these facts. The Commission then inserted its own method—to simply use the untrended original cost. However, the witness who strongly supported this approach admitted that he did not know whether this would accurately establish the reproduction cost of the items. The parties agree that applicable indices did exist, but none of them were used. We believe that this area of the order was unreasonable, being unsupported by substantial evidence.

## DEPRECIATION

■ It is necessary to deduct from reproduction cost any depreciation which the Company's property has suffered. The Company attempted to establish what the depreciation was by actually examining randomly selected sections of its underground pipe and other equipment. For the following reasons the Commission may properly have rejected that evidence: the sampling technique was not verified, no metallurgical or stress tests were performed, there apparently was no disassembly of equipment, and little or no attention was given to functional depreciation. Having rejected this evidence, the Commission substitued its own indicator—the Company's book reserve for depreciation. Yet, Mr. Cardey, a staff witness, twice testified that he did not believe the depreciation reserve necessarily reflected value of property, and no other evidence established that it did. Therefore, there does not appear to be sufficient evidence to establish the reasonableness of the order in this area. The Company argues that the Commission was bound to accept its depreciation study because the District Court of Santa Fe County [in Southern Union Gas Co. v. New Mexico Public Service Commission, Cause No. 31074 (1961)] had previously held that where evidence of observed depreciation is available, the Commission may not fail to apply it. We reject this argument on two grounds. First, we do not believe such studies must be applied when other evidence impeaches them, as in this case. Secondly, § 68–5–14, N.M. S.A.1953, sets out several factors which the Commission is bound to consider when establishing the value of Company property: (1) the history and development of the property and business of the particular public utility; (2) the original cost; (3) the cost of reproduction as a going concern, and (4) other elements of value recognized by the laws of the land for rate making purposes. Rather obviously, chaining the Commission to a single factor for ascertaining depreciation is not in the spirit of a statute which grants the Commission such great flexibility. Whether observed physical depreciation or book reserve depreciation or some other indicator is used, there must be substantial evidence that it accurately aids in determining value.

## RATE OF RETURN

The Commission ordered that 6.75% was a proper rate of return. Because the rate allowed is so directly connected with

whether the goals of § 68–3–1(B), supra, will be achieved, it is important to keep those goals in mind as we proceed. Enough actual dollars must be produced that both ratepayers and investors are justly and reasonably treated.

■ Below, the district court held that the order was unreasonable and unlawful because it did not simply turn the cost of capital percentage (established by both parties at somewhere between 7.53% and 7.63%) directly into a rate of return. We believe that there was no evidence that such a procedure would meet the statutory goals. As a matter of fact, the Company did not seem to think so. It requested a 7.25% rate as being:

"* * * high enough, averaged out over whatever period the new rates set in this proceeding remain in effect, to let us avoid any significant impairment in Southern Union's financial integrity and ability to attract new capital at non-premium rates. * * *"

The Commission's order states:

"The cost of capital is not the rate of return to be applied to fair value of the property but merely one of the component parts in determining a fair rate of return."

Other component parts were: current economic conditions, the present cost of capital, the rate of return of other enterprises having corresponding risk, and the principles of law governing the determination of just and reasonable rates of return for utilities. We agree with the Commission's reasoning, but because there was little or no evidence that the particular rate chosen by the Commission would achieve the statutory goals we agree with the district court that the order was unreasonable. Also in this regard, we wish to emphasize the difficulty caused to an appellate court by such lack of evidence, illustrated in State Corp. Com'n of Kansas v. Federal Power Com'n, 206 F.2d 690, 722 (8th Cir. 1953) wherein the court said:

"Accordingly, we hold that the findings made as to the allowed rate of return are insufficient, and that this case must be remanded to the Commission with direction to set out more fully and particularly the facts and the reasons bearing on its decision as to the rate of return. We have no desire to substitute our judgment for that of the Commission, and therefore we have no occasion to set out what we feel would be a fair rate of return. What is of importance is that we are unable from the reported findings to arrive at a reasoned conclusion that the 5½% rate of return allowed by the Commission is 'just and reasonable.' * * *

" * * *

"A mere assertion that the Commission has examined 'all of the available evidence of record on this subject' does not suffice to show this court, on review, that the conclusion of the Commission as to the rate of return is the result of the application of the Commission's expertise and judgment so that we would affirm. * * *"

■■ In the present case, the district court also held the nonapplication of the cost of capital percentage to be unreasonable and unlawful because in the preceding cause between the same parties, Cause No. 31074, supra, the cost of capital was actually used as the rate of return. In addition, there was no evidence of changed circumstances which would justify a departure from previous Commission procedure. The district court is correct. Although a Commission should be able to change its procedure, it should not arbitrarily or capriciously do so without good reasons.

To aid in choosing a particular rate of return, the Commission calculated the return on common equity which would result from various rates. The court below found and concluded that the calculations were incorrect for two reasons: first, they were based on a computation of common equity capital related to the original cost of the Company's property rather than to its fair value and, second, they were based on an allocation of the Company's total capi-

talization to the State of New Mexico rather than on the consolidated capital structure of the Company. If the "book equity" was used by the Commission to compare returns on that equity with other utilities, and if there is evidence that such comparisons would aid in choosing a just and reasonable rate, the Commission should have been allowed to use the book equity. In this case we do not find from the evidence any clear indication that the utilities to be compared were using book equity. Therefore, there does not seem to be evidence that such comparisons would be valid. In addition, assuming validity for the moment, there should be evidence that such comparisons would help achieve New Mexico's statutory goals. The second part of the court's finding and conclusion has to do with the fact that Southern Union Gas Company is not only engaged in utility business in other states, it is the parent company of subsidiaries which are not utilities and not located in New Mexico. The Commission attempted to determine what part of the book equity should be allocated to New Mexico so that a return on only that equity could be compared with other utilties. The Company agrees that the capital, including common equity, for its subsidiary operations should not be paid for by New Mexico ratepayers; but having objected to the Commission's allocation procedure, it offers no procedure itself. If, indeed, such comparisons are helpful, then the Commission or the Company will have to choose a reasonable method, supported by evidence, for allocating common book or fair value equity to New Mexico. We believe that did not occur in this case.

■ In its last point, the Commission claims error on the part of the district court in striking the Commission's motion for an amended praecipe. This motion would have had the effect of bringing the record of a previous case, referred to above, before this court. The record of that case was not a part of the record in the instant case and therefore was properly excluded. See Miller v. Smith, 59 N.M. 235, 282 P.2d 715 (1955).

## CONSTRUCTION WORK IN PROGRESS

■ As indicated above, the Company filed a cross appeal claiming that the district court erred in failing to hold unreasonable and unlawful the Commission's removal of $673,574 of construction work in progress from the Company's rate base. In its proposed rate base the Company had included construction work in progress in the amount of $1,641,631. The Commission concluded that on $968,057 of that amount there was no charge for interest and therefore allowed it in the rate base. The remainder, being the sum of $673,574, was not allowed on the basis that the Company charged interest on that construction work in progress until it was made a part of the plant and, therefore, ratepayers should not have been expected to give the Company a return on this item. Simply stated, the Commission kept from the rate base $673,574 in valuable property on the reasoning that it had included the interest on that amount, $4,904.62. When the object is to determine accurately the value of the Company's property, this action must be viewed as unreasonable.

## DEFERRED TAXES

■ The other point of cross appeal by the Company was to the effect that the court erred in failing to hold unreasonable and unlawful the Commission's deduction from rate base of the Company's reserve of $3,112,000 for deferred taxes. The type of value represented by plant purchased with money from loans, preferred stock, and common stock seems fundamentally different from the type of value represented by plant purchased with money obtained from ratepayers and being held temporarily until used to pay taxes. We believe that § 68–5–14, supra, does not compel inclusion of value of the latter type in the rate base and because the laws of the land do lend support for the Commission's action, it was reasonable and lawful.

Finally, we must say that utilities are controlled because they are monopolies and they should be. However, like any other corporation, they need all the prerogatives of the marketplace, the ability to borrow money for expansion and the right to earn a controlled profit for their stockholders. Without them, they will decline and fail. Thorough and perhaps even innovative presentations of evidence by both the Company and the Commission will not only preserve these prerogatives, they will assure the achievement of New Mexico's statutory goals for utility regulation and supervision.

For the reasons stated above the judgment of the court below annulling and vacating the order of the Commission as unreasonable and unlawful is affirmed. The cause is hereby remanded to the Public Service Commission for further proceedings not inconsistent with this opinion.

It is so ordered.

COMPTON, C. J., and OMAN, J., concur.