587 P.2d 1334

ALTO VILLAGE SERVICES CORPORA-
TION, Petitioner-Appellant,

v.

NEW MEXICO PUBLIC SERVICE COM-
MISSION, Respondent-Appellee.

No. 11548.

Supreme Court of New Mexico.

Nov. 9, 1978.

Olmsted & Cohen, Charles D. Olmsted, Santa Fe, for petitioner-appellant.

Toney Anaya, Atty. Gen., Leonard A. Helman, David S. Cohen, Asst. Attys. Gen., Santa Fe, for respondent-appellee.

## OPINION

FEDERICI, Justice.

Upon rehearing, the original opinion is withdrawn and this opinion substituted therefor.

This is an appeal to this Court pursuant to § 68–9–7, N.M.S.A.1953 (Repl.1974), from a judgment of the Lincoln County District Court affirming an order of defendant-appellee New Mexico Public Service Commission (Commission). The order established the rates plaintiff-appellant Alto Village Services Corporation (Alto) shall charge its several classes of customers for water utility services within the Alto Village Subdivision in Lincoln County, New Mexico (Subdivision). The service rate order of the Commission was entered following two hearings

held before it, and the order was reviewed and affirmed by the district court.

Alto is a New Mexico corporation engaged in the business of producing, distributing and selling water within the Subdivision, which consists of 940 lots and the Alto Lakes Golf and Country Club.

On January 26, 1976, Lakeside Corporation transferred to Alto 501.94 acre feet of water rights and the entire Subdivision water system which had an original cost value of $1,023,256.21. The water rights alone had a value of $501,940.00. Although Alto's water plant and system were built to serve all 940 lots of the Subdivision, as well as the golf course and country club at the time of the transfer, it was actually serving the golf course, the country club and metered residences on 140 lots throughout the entire Subdivision. It was anticipated that by the year 1981, an additional 60 homes would have been added for a total of 200 residential customers.

The original cost of Alto's "water plant in-service" on December 31, 1975 was $1,023,256.21. Accumulated depreciation and amortization deductible from that amount was $109,620.99. After adding cash working capital, materials and supplies, and prepayments in the total amount of $11,714.48, Alto's "net original cost rate base" was $925,349.70. Its "fair value rate base" was $1,272,365.61. Although all of Alto's water plant is "in-service" the Commission found that the "whole system is not needed to serve the present number of customers." That is, during the five years from 1976 to 1981, only 32.52% of Alto's water plant will be "used and useful" to serve the customers and the golf course and the country club. Accordingly, the Commission concluded that Alto's "used and useful," test-year, original cost rate base is $308,828.65 and its "used and useful" test-year reproduction cost rate base is $421,678.23.

Alto's annual net operating income after payment of test-year operation and maintenance, depreciation and amortization, and tax costs under its proposed service rates would be $57,895.03. The Commission found that an annual net operating income in the amount of $27,799.03 (9% rate of return on Alto's "used and useful" original cost rate base of $308,828.65 and a 7.61% rate of return on Alto's "used and useful" fair value rate base of $421,768.23) is "just and reasonable." Based upon the foregoing and the recommendation of its staff, the Commission set the monthly rates to be charged by Alto to its customers and to the Golf and Country Club.

On appeal Alto contends that:

(1) The finding of the Commission that only 32.52% of Alto's water plant was currently "used and useful" is not supported by substantial evidence and the overwhelming weight of the evidence supports Alto's requested finding that 75% of its water plant was currently "necessary, used and useful" in furnishing water services to its customers, and

(2) The finding of the Commission that a net return on "used and useful" rate base of $27,799 is just and reasonable is not supported by substantial evidence, and the overwhelming weight of the evidence supports Alto's request for service rates that will generate a net return on "used and useful" rate base of at least $57,895 from the golf course and 200 residential customers.

It is undisputed that the original cost of Alto's water plant actually "in service" as of December 31, 1975 (end of the test year) was $1,023,256, and that, after deducting accumulated depreciation and amortization, and adding cash working capital, materials, supplies and prepayments, the value of Alto's "net original cost rate base" was $925,349. Nor is it disputed that the "fair value" of Alto's rate base was $1,272,365. What is challenged by Alto is the Commission's determination that only 32.52% of Alto's "in-service" water plant is currently "used and useful" to serve existing residences, the country club and the golf course

within the Subdivision. Alto contends that the value of its existing plant which is actually "necessary, used and useful" to currently serve these customers, after deducting the value or cost of excess capacity is 75% of the total value, whether determined on a fair value or original cost basis.

■ It is settled in this jurisdiction that on appeal from administrative bodies the questions to be resolved are restricted to whether the Commission acted fraudulently, arbitrarily or capriciously, whether the Commission order was supported by substantial evidence, and whether the action of the Commission was within the scope of its authority. *Llano, Inc. v. Southern Union Gas Company*, 75 N.M. 7, 399 P.2d 646 (1964). Alto does not contend that the Commission acted fraudulently or outside the scope of its authority. Rather, Alto claims that the Commission refused to give any weight to Alto's "used and useful" testimony, and that, therefore, the Commission's order is arbitrary and not supported by substantial evidence. Alto contends further that the service rates fixed by the Commission upon the basis of those findings are arbitrary.

Alto does not object to the amount of the rate of return or the type of rate base set by the Commission to which its percentage rates of return were matched. Alto does object to the Commission's determinations of the rate base values and therefore to the Commission's quantification of the return requirement and the service rates fixed by it. There is no dispute on the Commission's valuations of Alto's water rights and plant. There is a dispute concerning the portions of those values allowed by the Commission in Alto's rate bases designated as "used and useful."

Sterling Freeman, a graduate civil engineer and former chief engineer at the El Paso Water Utility, testified for Alto. Mr. Freeman determined the percentage of Alto's water plant which would be "used and useful" (i. e., actually needed to furnish water services to the residences, golf course and country club) during the five years immediately following December 31, 1975. For purposes of his study, Mr. Freeman assumed a beginning population of 140 residences and a period-ending population of 200, an increase of 12 new residences per year for five years, which corresponded to the Commission's calculation. Mr. Freeman noted four items which could be reduced and still permit the plant to serve 200 customers plus the golf course.

While he nevertheless believed that all existing water rights and plant, without any reduction, were "necessary to serve the property covered by Alto's application to the Commission," Mr. Freeman concluded "that 75% of the total utility plant is *used and useful* and that without such 75% the 200 customers and the golf course simply could not be properly served."

The only other witness who testified as to what part of Alto's existing water rights and plant were "used and useful" was Commission staff rate analyst, Robert R. Johnson. He made no engineering analysis to determine how much of Alto's existing water rights and plant were "actually needed to serve the 200 customers that we have been talking about." Mr. Johnson, after lengthy direct examination and cross-examination, concluded that in his opinion Alto's water plant was overbuilt in relation to the number of customers and concluded that 32.52% of the existing water rights and plant were "used and useful" for serving Alto's customers during the period of time that the service rates fixed by the Commission would be in effect.

■ While we have not set out in full the complete testimony of the witnesses, we have set forth sufficient evidence to show that the testimony of the expert witnesses was at complete variance with reference to the percentage of Alto's water plant which would be "used and useful." On this issue the Commission apparently accepted only the testimony of its own rate analyst and

the recommendations of its staff and gave no weight to the testimony presented by Alto. The rule is well established in this jurisdiction that the testimony of witnesses, whether interested or disinterested, cannot arbitrarily be disregarded by the trier of the facts unless any of the following appear from the record: (a) that the witness is impeached; (b) that the testimony is equivocal or contains inherent improbabilities; (c) that there are suspicious circumstances surrounding the transaction testified to; or (d) that there are legitimate inferences from the facts which cast doubt upon the truth or accuracy of the testimony. *Tauch v. Ferguson-Steere Motor Company*, 62 N.M. 429, 312 P.2d 83 (1957); *Heron v. Gaylor*, 52 N.M. 23, 190 P.2d 208 (1947); *Medler v. Henry*, 44 N.M. 275, 101 P.2d 398 (1940). The rule applies in this case. We do not find in the record anything which even infers that the testimony of witness Freeman comes within the exceptions to the rule. We do not direct appellee to accept the testimony of appellant's witness *to the exclusion* of appellee's witness. We do direct appellee to *weigh all of the evidence* in the case and not arbitrarily disregard particularly important and qualified testimony whether it be a witness for the Commission or a witness for the utility, absent an exception to the rule set forth above.

■ While the specific question does not appear to have been considered by the courts of this jurisdiction, it nevertheless has been established that whether utility property is "used and useful" and therefore to be included in the rate base is a factual determination. *Idaho Underground Wat. Us. Ass'n v. Idaho Power Co.*, 89 Idaho 147, 404 P.2d 859 (1965); *Kansas Gas & Electric Co. v. State Corp. Com'n*, 218 Kan. 670, 544 P.2d 1396 (1976); *State ex rel. Utilities Com'n v. General Tel. Co. of the S. E.*, 281 N.C. 318, 189 S.E.2d 705 (1972); *Lake Superior District P. Co. v. Public Service Com'n*, 235 Wis. 667, 294 N.W. 45 (1940). Since the matter of "used and useful" utility plant for purposes of establishing a rate base is a factual determination, it must be supported by substantial evidence. *Maestas v. New Mexico Public Service Commission*, 85 N.M. 571, 574, 514 P.2d 847, 850 (1973); *Llano, Inc. v. Southern Union Gas Company, supra.*

Appellee's counsel call our attention to prior opinions of this Court defining substantial evidence and prescribing the function of appellate review relative to substantial evidence and to the indulgence of appellate court in reasonable inferences in support of a judgment. We have no quarrel with the principles announced in those cases. It is equally well established, however, that this Court will declare a judgment or administrative order void when there is a lack of substantial evidence to support it. *Southern Union Gas Co. v. New Mexico Pub. Serv. Com'n*, 84 N.M. 330, 503 P.2d 310 (1972).

■ In the light of the particular facts in this case, and the testimony presented by appellee, and the law which we deem applicable, we find the Commission's order to be arbitrary, not supported by substantial evidence, and, therefore, void.

IT IS SO ORDERED.

McMANUS, C. J., and EASLEY and PAYNE, JJ., concur.

SOSA, J. (dissenting).

SOSA, Justice, dissenting.

I respectfully dissent.

The findings of the trial court having been based on substantial evidence, I would affirm its decision. The trial court made a specific finding, with which I concur, that the Commission's findings were not unreasonable. The evidence indicated that the plant was overbuilt; therefore, it would be inequitable to saddle the present residents with the costs of maintaining the entire water system when those residents only comprise less than one-fourth of the projected development.

Furthermore, the majority takes the position that the appellant's expert witness' testimony was arbitrarily disregarded by the trier of fact. I cannot agree with this. I firmly believe that although the two expert witnesses' testimony were at a complete variance with each other, the Commission and the trial court viewed the testimony of the two and chose to find for the Commission's witness. This in my mind was not an abuse of their discretion.

I would therefore affirm.